**Case No. 26-298**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

CENTER FOR BIOLOGICAL DIVERSITY
and CENTER FOR FOOD SAFETY,

Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY *et al.*,

Respondents,

SYNGENTA CROP PROTECTION, LLC,

Respondent-Intervenor.

---

On Petition for Review of an Order of the
United States Environmental Protection Agency

---

# STATUTORY ADDENDUM

Stephanie M. Parent
CENTER FOR BIOLOGICAL
DIVERSITY
P.O. Box 11374
Portland, OR 97221
T: (971) 717-6404
sparent@biologicaldiversity.org

Sharmeen Morrison
Gregory C. Loarie
EARTHJUSTICE
180 Steuart St. #194330
San Francisco, CA 94105
T: (415) 217-2000
smorrison@earthjustice.org
gloarie@earthjustice.org

Benjamin Rankin
CENTER FOR BIOLOGICAL DIVERSITY
1411 K St. NW, Ste. 1300
Washington, D.C. 20005
T: (202) 849-8402
brankin@biologicaldiversity.org

George A. Kimbrell
CENTER FOR FOOD SAFETY
2009 NE Alberta St., Suite 207
Portland, OR 97211
T: (971) 271-7372
gkimbrell@centerforfoodsafety.org

*Counsel for Petitioners*

# TABLE OF CONTENTS

## Statutes

7 U.S.C. § 136 .......... 1

7 U.S.C. § 136a .......... 9

7 U.S.C. § 136n .......... 26

## Regulations

40 C.F.R. § 152.3 .......... 28

40 C.F.R. § 158.1 .......... 30

40 C.F.R. § 158.630 .......... 31

AUTHENTICATED U.S. GOVERNMENT INFORMATION GPO



with respect to any violations, liabilities incurred, or appeals taken prior to such date of repeal or to sales, shipments, or deliveries of insecticides and fungicides exempted by the Secretary.

## SUBCHAPTER II—ENVIRONMENTAL PESTICIDE CONTROL

### §§ 135 to 135k. Omitted

#### Editorial Notes

CODIFICATION

Sections 135 to 135k, acts June 25, 1947, ch. 125, §§ 2–13, 61 Stat. 163–172; Aug. 7, 1959, Pub. L. 86–139, § 2, 73 Stat. 286; May 12, 1964, Pub. L. 88–305, §§ 1–6, 78 Stat. 190–193; Oct. 15, 1970, Pub. L. 91–452, title II, § 204, 84 Stat. 928; Dec. 30, 1970, Pub. L. 91–601, § 6(b), formerly § 7(b), 84 Stat. 1673, renumbered, Aug. 13, 1981, Pub. L. 97–35, title XII, § 1205(c), 95 Stat. 716, which related to economic poison control, were superseded by the amendments made to act June 25, 1947, by Pub. L. 92–516, Oct. 21, 1972, 86 Stat. 975. See section 4 of Pub. L. 92–516, set out as a note under section 136 of this title. The provisions of act June 25, 1947, as amended by Pub. L. 92–516, are set out in section 136 et seq. of this title.

Section 135 provided definitions for the purposes of this subchapter.

Section 135a related to prohibited acts.

Section 135b related to registration of economic poisons.

Section 135c related to access, inspection, and use in criminal prosecutions of books and records.

Section 135d related to rules and regulations, examination of economic poisons or devices, notification to violators, certification to United States attorney, duty of attorney, and publication of judgments.

Section 135e related to exemptions from penalties.

Section 135f provided for penalties.

Section 135g related to seizure, disposal, and award of costs against claimant.

Section 135h related to refusal of admission of imports.

Section 135i related to delegation of duties.

Section 135j related to authorization of appropriations and expenditure of funds.

Section 135k related to cooperation between departments and agencies.

### § 136. Definitions

For purposes of this subchapter—

**(a) Active ingredient**

The term ''active ingredient'' means—

(1) in the case of a pesticide other than a plant regulator, defoliant, desiccant, or nitrogen stabilizer, an ingredient which will prevent, destroy, repel, or mitigate any pest;

(2) in the case of a plant regulator, an ingredient which, through physiological action, will accelerate or retard the rate of growth or rate of maturation or otherwise alter the behavior of ornamental or crop plants or the product thereof;

(3) in the case of a defoliant, an ingredient which will cause the leaves or foliage to drop from a plant;

(4) in the case of a desiccant, an ingredient which will artificially accelerate the drying of plant tissue; and

(5) in the case of a nitrogen stabilizer, an ingredient which will prevent or hinder the process of nitrification, denitrification, ammonia volatilization, or urease production through action affecting soil bacteria.

**(b) Administrator**

The term ''Administrator'' means the Administrator of the Environmental Protection Agency.

**(c) Adulterated**

The term ''adulterated'' applies to any pesticide if—

(1) its strength or purity falls below the professed standard of quality as expressed on its labeling under which it is sold;

(2) any substance has been substituted wholly or in part for the pesticide; or

(3) any valuable constituent of the pesticide has been wholly or in part abstracted.

**(d) Animal**

The term ''animal'' means all vertebrate and invertebrate species, including but not limited to man and other mammals, birds, fish, and shellfish.

**(e) Certified applicator, etc.**

**(1) Certified applicator**

The term ''certified applicator'' means any individual who is certified under section 136i of this title as authorized to use or supervise the use of any pesticide which is classified for restricted use. Any applicator who holds or applies registered pesticides, or uses dilutions of registered pesticides consistent with subsection (ee), only to provide a service of controlling pests without delivering any unapplied pesticide to any person so served is not deemed to be a seller or distributor of pesticides under this subchapter.

**(2) Private applicator**

The term ''private applicator'' means a certified applicator who uses or supervises the use of any pesticide which is classified for restricted use for purposes of producing any agricultural commodity on property owned or rented by the applicator or the applicator's employer or (if applied without compensation other than trading of personal services between producers of agricultural commodities) on the property of another person.

**(3) Commercial applicator**

The term ''commercial applicator'' means an applicator (whether or not the applicator is a private applicator with respect to some uses) who uses or supervises the use of any pesticide which is classified for restricted use for any purpose or on any property other than as provided by paragraph (2).

**(4) Under the direct supervision of a certified applicator**

Unless otherwise prescribed by its labeling, a pesticide shall be considered to be applied under the direct supervision of a certified applicator if it is applied by a competent person acting under the instructions and control of a certified applicator who is available if and when needed, even though such certified applicator is not physically present at the time and place the pesticide is applied.

**(f) Defoliant**

The term ''defoliant'' means any substance or mixture of substances intended for causing the

leaves or foliage to drop from a plant, with or without causing abscission.

**(g) Desiccant**

The term ''desiccant'' means any substance or mixture of substances intended for artificially accelerating the drying of plant tissue.

**(h) Device**

The term ''device'' means any instrument or contrivance (other than a firearm) which is intended for trapping, destroying, repelling, or mitigating any pest or any other form of plant or animal life (other than man and other than bacteria, virus, or other microorganism on or in living man or other living animals); but not including equipment used for the application of pesticides when sold separately therefrom.

**(i) District court**

The term ''district court'' means a United States district court, the District Court of Guam, the District Court of the Virgin Islands, and the highest court of American Samoa.

**(j) Environment**

The term ''environment'' includes water, air, land, and all plants and man and other animals living therein, and the interrelationships which exist among these.

**(k) Fungus**

The term ''fungus'' means any non-chlorophyll-bearing thallophyte (that is, any non-chlorophyll-bearing plant of a lower order than mosses and liverworts), as for example, rust, smut, mildew, mold, yeast, and bacteria, except those on or in living man or other animals and those on or in processed food, beverages, or pharmaceuticals.

**(*l*) Imminent hazard**

The term ''imminent hazard'' means a situation which exists when the continued use of a pesticide during the time required for cancellation proceeding would be likely to result in unreasonable adverse effects on the environment or will involve unreasonable hazard to the survival of a species declared endangered or threatened by the Secretary pursuant to the Endangered Species Act of 1973 [16 U.S.C. 1531 et seq.].

**(m) Inert ingredient**

The term ''inert ingredient'' means an ingredient which is not active.

**(n) Ingredient statement**

The term ''ingredient statement'' means a statement which contains—

(1) the name and percentage of each active ingredient, and the total percentage of all inert ingredients, in the pesticide; and

(2) if the pesticide contains arsenic in any form, a statement of the percentages of total and water soluble arsenic, calculated as elementary arsenic.

**(*o*) Insect**

The term ''insect'' means any of the numerous small invertebrate animals generally having the body more or less obviously segmented, for the most part belonging to the class insecta, comprising six-legged, usually winged forms, as for example, beetles, bugs, bees, flies, and to other allied classes of arthropods whose members are wingless and usually have more than six legs, as for example, spiders, mites, ticks, centipedes, and wood lice.

**(p) Label and labeling**

**(1) Label**

The term ''label'' means the written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers.

**(2) Labeling**

The term ''labeling'' means all labels and all other written, printed, or graphic matter—

(A) accompanying the pesticide or device at any time; or

(B) to which reference is made on the label or in literature accompanying the pesticide or device, except to current official publications of the Environmental Protection Agency, the United States Departments of Agriculture and Interior, the Department of Health and Human Services, State experiment stations, State agricultural colleges, and other similar Federal or State institutions or agencies authorized by law to conduct research in the field of pesticides.

**(q) Misbranded**

(1) A pesticide is misbranded if—

(A) its labeling bears any statement, design, or graphic representation relative thereto or to its ingredients which is false or misleading in any particular;

(B) it is contained in a package or other container or wrapping which does not conform to the standards established by the Administrator pursuant to section 136w(c)(3) of this title;

(C) it is an imitation of, or is offered for sale under the name of, another pesticide;

(D) its label does not bear the registration number assigned under section 136e of this title to each establishment in which it was produced;

(E) any word, statement, or other information required by or under authority of this subchapter to appear on the label or labeling is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or graphic matter in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use;

(F) the labeling accompanying it does not contain directions for use which are necessary for effecting the purpose for which the product is intended and if complied with, together with any requirements imposed under section 136a(d) of this title, are adequate to protect health and the environment;

(G) the label does not contain a warning or caution statement which may be necessary and if complied with, together with any requirements imposed under section 136a(d) of this title, is adequate to protect health and the environment; or

(H) in the case of a pesticide not registered in accordance with section 136a of this title

and intended for export, the label does not contain, in words prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or graphic matter in the labeling) as to render it likely to be noted by the ordinary individual under customary conditions of purchase and use, the following: ''Not Registered for Use in the United States of America''.

(2) A pesticide is misbranded if—

(A) the label does not bear an ingredient statement on that part of the immediate container (and on the outside container or wrapper of the retail package, if there be one, through which the ingredient statement on the immediate container cannot be clearly read) which is presented or displayed under customary conditions of purchase, except that a pesticide is not misbranded under this subparagraph if—

(i) the size or form of the immediate container, or the outside container or wrapper of the retail package, makes it impracticable to place the ingredient statement on the part which is presented or displayed under customary conditions of purchase; and

(ii) the ingredient statement appears prominently on another part of the immediate container, or outside container or wrapper, permitted by the Administrator;

(B) the labeling does not contain a statement of the use classification under which the product is registered;

(C) there is not affixed to its container, and to the outside container or wrapper of the retail package, if there be one, through which the required information on the immediate container cannot be clearly read, a label bearing—

(i) the name and address of the producer, registrant, or person for whom produced;

(ii) the name, brand, or trademark under which the pesticide is sold;

(iii) the net weight or measure of the content, except that the Administrator may permit reasonable variations; and

(iv) when required by regulation of the Administrator to effectuate the purposes of this subchapter, the registration number assigned to the pesticide under this subchapter, and the use classification; and

(D) the pesticide contains any substance or substances in quantities highly toxic to man, unless the label shall bear, in addition to any other matter required by this subchapter—

(i) the skull and crossbones;

(ii) the word ''poison'' prominently in red on a background of distinctly contrasting color; and

(iii) a statement of a practical treatment (first aid or otherwise) in case of poisoning by the pesticide.

**(r) Nematode**

The term ''nematode'' means invertebrate animals of the phylum nemathelminthes and class nematoda, that is, unsegmented round worms with elongated, fusiform, or saclike bodies covered with cuticle, and inhabiting soil, water, plants, or plant parts; may also be called nemas or eelworms.

**(s) Person**

The term ''person'' means any individual, partnership, association, corporation, or any organized group of persons whether incorporated or not.

**(t) Pest**

The term ''pest'' means (1) any insect, rodent, nematode, fungus, weed, or (2) any other form of terrestrial or aquatic plant or animal life or virus, bacteria, or other micro-organism (except viruses, bacteria, or other micro-organisms on or in living man or other living animals) which the Administrator declares to be a pest under section 136w(c)(1) of this title.

**(u) Pesticide**

The term ''pesticide'' means (1) any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest, (2) any substance or mixture of substances intended for use as a plant regulator, defoliant, or desiccant, and (3) any nitrogen stabilizer, except that the term ''pesticide'' shall not include any article that is a ''new animal drug'' within the meaning of section 321(w)[1] of title 21, that has been determined by the Secretary of Health and Human Services not to be a new animal drug by a regulation establishing conditions of use for the article, or that is an animal feed within the meaning of section 321(x)[1] of title 21 bearing or containing a new animal drug. The term ''pesticide'' does not include liquid chemical sterilant products (including any sterilant or subordinate disinfectant claims on such products) for use on a critical or semi-critical device, as defined in section 321 of title 21. For purposes of the preceding sentence, the term ''critical device'' includes any device which is introduced directly into the human body, either into or in contact with the bloodstream or normally sterile areas of the body and the term ''semicritical device'' includes any device which contacts intact mucous membranes but which does not ordinarily penetrate the blood barrier or otherwise enter normally sterile areas of the body.

**(v) Plant regulator**

The term ''plant regulator'' means any substance or mixture of substances intended, through physiological action, for accelerating or retarding the rate of growth or rate of maturation, or for otherwise altering the behavior of plants or the produce thereof, but shall not include substances to the extent that they are intended as plant nutrients, trace elements, nutritional chemicals, plant inoculants, and soil amendments. Also, the term ''plant regulator'' shall not be required to include any of such of those nutrient mixtures or soil amendments as are commonly known as vitamin-hormone horticultural products, intended for improvement, maintenance, survival, health, and propagation of plants, and as are not for pest destruction and

[1] See References in Text note below.

are nontoxic, nonpoisonous in the undiluted packaged concentration.

**(w) Producer and produce**

The term ''producer'' means the person who manufactures, prepares, compounds, propagates, or processes any pesticide or device or active ingredient used in producing a pesticide. The term ''produce'' means to manufacture, prepare, compound, propagate, or process any pesticide or device or active ingredient used in producing a pesticide. The dilution by individuals of formulated pesticides for their own use and according to the directions on registered labels shall not of itself result in such individuals being included in the definition of ''producer'' for the purposes of this subchapter.

**(x) Protect health and the environment**

The terms ''protect health and the environment'' and ''protection of health and the environment'' mean protection against any unreasonable adverse effects on the environment.

**(y) Registrant**

The term ''registrant'' means a person who has registered any pesticide pursuant to the provisions of this subchapter.

**(z) Registration**

The term ''registration'' includes reregistration.

**(aa) State**

The term ''State'' means a State, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the Trust Territory of the Pacific Islands, and American Samoa.

**(bb) Unreasonable adverse effects on the environment**

The term ''unreasonable adverse effects on the environment'' means (1) any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide, or (2) a human dietary risk from residues that result from a use of a pesticide in or on any food inconsistent with the standard under section 346a of title 21. The Administrator shall consider the risks and benefits of public health pesticides separate from the risks and benefits of other pesticides. In weighing any regulatory action concerning a public health pesticide under this subchapter, the Administrator shall weigh any risks of the pesticide against the health risks such as the diseases transmitted by the vector to be controlled by the pesticide.

**(cc) Weed**

The term ''weed'' means any plant which grows where not wanted.

**(dd) Establishment**

The term ''establishment'' means any place where a pesticide or device or active ingredient used in producing a pesticide is produced, or held, for distribution or sale.

**(ee) To use any registered pesticide in a manner inconsistent with its labeling**

The term ''to use any registered pesticide in a manner inconsistent with its labeling'' means to use any registered pesticide in a manner not permitted by the labeling, except that the term shall not include (1) applying a pesticide at any dosage, concentration, or frequency less than that specified on the labeling unless the labeling specifically prohibits deviation from the specified dosage, concentration, or frequency, (2) applying a pesticide against any target pest not specified on the labeling if the application is to the crop, animal, or site specified on the labeling, unless the Administrator has required that the labeling specifically state that the pesticide may be used only for the pests specified on the labeling after the Administrator has determined that the use of the pesticide against other pests would cause an unreasonable adverse effect on the environment, (3) employing any method of application not prohibited by the labeling unless the labeling specifically states that the product may be applied only by the methods specified on the labeling, (4) mixing a pesticide or pesticides with a fertilizer when such mixture is not prohibited by the labeling, (5) any use of a pesticide in conformance with section 136c, 136p, or 136v of this title, or (6) any use of a pesticide in a manner that the Administrator determines to be consistent with the purposes of this subchapter. After March 31, 1979, the term shall not include the use of a pesticide for agricultural or forestry purposes at a dilution less than label dosage unless before or after that date the Administrator issues a regulation or advisory opinion consistent with the study provided for in section 27(b) of the Federal Pesticide Act of 1978, which regulation or advisory opinion specifically requires the use of definite amounts of dilution.

**(ff) Outstanding data requirement**

**(1) In general**

The term ''outstanding data requirement'' means a requirement for any study, information, or data that is necessary to make a determination under section 136a(c)(5) of this title and which study, information, or data—

(A) has not been submitted to the Administrator; or

(B) if submitted to the Administrator, the Administrator has determined must be resubmitted because it is not valid, complete, or adequate to make a determination under section 136a(c)(5) of this title and the regulations and guidelines issued under such section.

**(2) Factors**

In making a determination under paragraph (1)(B) respecting a study, the Administrator shall examine, at a minimum, relevant protocols, documentation of the conduct and analysis of the study, and the results of the study to determine whether the study and the results of the study fulfill the data requirement for which the study was submitted to the Administrator.

**(gg) To distribute or sell**

The term ''to distribute or sell'' means to distribute, sell, offer for sale, hold for distribution, hold for sale, hold for shipment, ship, deliver for shipment, release for shipment, or receive and (having so received) deliver or offer to deliver. The term does not include the holding or application of registered pesticides or use dilutions

thereof by any applicator who provides a service of controlling pests without delivering any unapplied pesticide to any person so served.

**(hh) Nitrogen stabilizer**

The term ''nitrogen stabilizer'' means any substance or mixture of substances intended for preventing or hindering the process of nitrification, denitrification, ammonia volatilization, or urease production through action upon soil bacteria. Such term shall not include—

(1) dicyandiamide;

(2) ammonium thiosulfate; or

(3) any substance or mixture of substances.—[2]

(A) that was not registered pursuant to section 136a of this title prior to January 1, 1992; and

(B) that was in commercial agronomic use prior to January 1, 1992, with respect to which after January 1, 1992, the distributor or seller of the substance or mixture has made no specific claim of prevention or hindering of the process of nitrification, denitrification, ammonia volatilization[3] urease production regardless of the actual use or purpose for, or future use or purpose for, the substance or mixture.

Statements made in materials required to be submitted to any State legislative or regulatory authority, or required by such authority to be included in the labeling or other literature accompanying any such substance or mixture shall not be deemed a specific claim within the meaning of this subsection.

**(jj)[4] Maintenance applicator**

The term ''maintenance applicator'' means any individual who, in the principal course of such individual's employment, uses, or supervises the use of, a pesticide not classified for restricted use (other than a ready to use consumer products pesticide); for the purpose of providing structural pest control or lawn pest control including janitors, general maintenance personnel, sanitation personnel, and grounds maintenance personnel. The term ''maintenance applicator'' does not include private applicators as defined in subsection (e)(2); individuals who use antimicrobial pesticides, sanitizers or disinfectants; individuals employed by Federal, State, and local governments or any political subdivisions thereof, or individuals who use pesticides not classified for restricted use in or around their homes, boats, sod farms, nurseries, greenhouses, or other noncommercial property.

**(kk) Service technician**

The term ''service technician'' means any individual who uses or supervises the use of pesticides (other than a ready to use consumer products pesticide) for the purpose of providing structural pest control or lawn pest control on the property of another for a fee. The term ''service technician'' does not include individuals who use antimicrobial pesticides, sanitizers or disinfectants; or who otherwise apply ready to use consumer products pesticides.

[2] So in original. Period probably should not appear.

[3] So in original. Probably should be followed by '', or''.

[4] So in original. No subsec. (ii) was enacted.

**(*ll*) Minor use**

The term ''minor use'' means the use of a pesticide on an animal, on a commercial agricultural crop or site, or for the protection of public health where—

(1) the total United States acreage for the crop is less than 300,000 acres, as determined by the Secretary of Agriculture; or

(2) the Administrator, in consultation with the Secretary of Agriculture, determines that, based on information provided by an applicant for registration or a registrant, the use does not provide sufficient economic incentive to support the initial registration or continuing registration of a pesticide for such use and—

(A) there are insufficient efficacious alternative registered pesticides available for the use;

(B) the alternatives to the pesticide use pose greater risks to the environment or human health;

(C) the minor use pesticide plays or will play a significant part in managing pest resistance; or

(D) the minor use pesticide plays or will play a significant part in an integrated pest management program.

The status as a minor use under this subsection shall continue as long as the Administrator has not determined that, based on existing data, such use may cause an unreasonable adverse effect on the environment and the use otherwise qualifies for such status.

**(mm) Antimicrobial pesticide**

**(1) In general**

The term ''antimicrobial pesticide'' means a pesticide that—

(A) is intended to—

(i) disinfect, sanitize, reduce, or mitigate growth or development of microbiological organisms; or

(ii) protect inanimate objects, industrial processes or systems, surfaces, water, or other chemical substances from contamination, fouling, or deterioration caused by bacteria, viruses, fungi, protozoa, algae, or slime; and

(B) in the intended use is exempt from, or otherwise not subject to, a tolerance under section 346a of title 21 or a food additive regulation under section 348 of title 21.

**(2) Excluded products**

The term ''antimicrobial pesticide'' does not include—

(A) a wood preservative or antifouling paint product for which a claim of pesticidal activity other than or in addition to an activity described in paragraph (1) is made;

(B) an agricultural fungicide product; or

(C) an aquatic herbicide product.

**(3) Included products**

The term ''antimicrobial pesticide'' does include any other chemical sterilant product (other than liquid chemical sterilant products exempt under subsection (u)), any other disinfectant product, any other industrial microbiocide product, and any other preserva-

tive product that is not excluded by paragraph (2).

**(nn) Public health pesticide**

The term ''public health pesticide'' means any minor use pesticide product registered for use and used predominantly in public health programs for vector control or for other recognized health protection uses, including the prevention or mitigation of viruses, bacteria, or other microorganisms (other than viruses, bacteria, or other microorganisms on or in living man or other living animal) that pose a threat to public health.

**(*oo*) Vector**

The term ''vector'' means any organism capable of transmitting the causative agent of human disease or capable of producing human discomfort or injury, including mosquitoes, flies, fleas, cockroaches, or other insects and ticks, mites, or rats.

(June 25, 1947, ch. 125, § 2, as added Pub. L. 92–516, § 2, Oct. 21, 1972, 86 Stat. 975; amended Pub. L. 93–205, § 13(f), Dec. 28, 1973, 87 Stat. 903; Pub. L. 94–140, § 9, Nov. 28, 1975, 89 Stat. 754; Pub. L. 95–396, § 1, Sept. 30, 1978, 92 Stat. 819; Pub. L. 100–532, title I, § 101, title VI, § 601(a), title VIII, § 801(a), Oct. 25, 1988, 102 Stat. 2655, 2677, 2679; Pub. L. 102–237, title X, § 1006(a)(1), (2), (b)(3)(A), (B), Dec. 13, 1991, 105 Stat. 1894, 1895; Pub. L. 104–170, title I, §§ 105(a), 120, title II, §§ 210(a), 221, 230, title III, § 304, Aug. 3, 1996, 110 Stat. 1490, 1492, 1493, 1502, 1508, 1512.)

### Editorial Notes

#### References in Text

The Endangered Species Act of 1973, referred to in subsec. (*l*), is Pub. L. 93–205, Dec. 28, 1973, 87 Stat. 884, which is classified generally to chapter 35 (§ 1531 et seq.) of Title 16, Conservation. For complete classification of this Act to the Code, see Short Title note set out under section 1531 of Title 16 and Tables.

Section 321 of title 21, referred to in subsec. (u), was subsequently amended, and subsecs. (w) and (x) of section 321 no longer define the terms ''new animal drug'' and ''animal feed'', respectively. However, such terms are defined elsewhere in that section.

Section 27(b) of Federal Pesticide Act of 1978, referred to in subsec. (ee), is section 27(b) of Pub. L. 95–396, Sept. 30, 1978, 92 Stat. 841, which was formerly set out as a note under section 136w–4 of this title.

#### Prior Provisions

A prior section 2 of act June 25, 1947, was classified to section 135 of this title prior to amendment of act June 25, 1947, by Pub. L. 92–516.

#### Amendments

1996—Subsec. (a)(1). Pub. L. 104–170, § 105(a)(1)(A), substituted ''defoliant, desiccant, or nitrogen stabilizer'' for ''defoliant, or desiccant''.

Subsec. (a)(5). Pub. L. 104–170, § 105(a)(1)(B)–(D), added par. (5).

Subsec. (u). Pub. L. 104–170, §§ 105(a)(2), 221(1), struck out ''and'' before ''(2)'', inserted ''and (3) any nitrogen stabilizer,'' after ''desiccant,'', and inserted at end ''The term 'pesticide' does not include liquid chemical sterilant products (including any sterilant or subordinate disinfectant claims on such products) for use on a critical or semi-critical device, as defined in section 321 of title 21. For purposes of the preceding sentence, the term 'critical device' includes any device which is introduced directly into the human body, either into or in contact with the bloodstream or normally sterile areas of the body and the term 'semi-critical device' includes any device which contacts intact mucous membranes but which does not ordinarily penetrate the blood barrier or otherwise enter normally sterile areas of the body.''

Subsec. (bb). Pub. L. 104–170, § 304, which directed amendment of section 2(bb) by inserting ''(1)'' after ''means'' and adding cl. (2), without specifying the Act being amended, was executed to this subsection, which is section 2(bb) of the Federal Insecticide, Fungicide, and Rodenticide Act, to reflect the probable intent of Congress.

Pub. L. 104–170, § 230(a), inserted at end ''The Administrator shall consider the risks and benefits of public health pesticides separate from the risks and benefits of other pesticides. In weighing any regulatory action concerning a public health pesticide under this subchapter, the Administrator shall weigh any risks of the pesticide against the health risks such as the diseases transmitted by the vector to be controlled by the pesticide.''

Subsec. (hh). Pub. L. 104–170, § 105(a)(3), added subsec. (hh).

Subsecs. (jj), (kk). Pub. L. 104–170, § 120, added subsecs. (jj) and (kk).

Subsec. (*ll*). Pub. L. 104–170, § 210(a), added subsec. (*ll*).

Subsec. (mm). Pub. L. 104–170, § 221(2), added subsec. (mm).

Subsecs. (nn), (*oo*). Pub. L. 104–170, § 230(b), added subsecs. (nn) and (*oo*).

1991—Subsec. (e)(1). Pub. L. 102–237, § 1006(a)(1), substituted ''section 136i'' for ''section 136b'' and ''uses dilutions'' for ''use dilutions'' and made technical amendment to reference to subsection (ee) of this section involving corresponding provision of original act.

Subsec. (e)(2). Pub. L. 102–237, § 1006(b)(3)(A), substituted ''the applicator or the applicator's'' for ''him or his''.

Subsec. (e)(3). Pub. L. 102–237, § 1006(b)(3)(B), substituted ''the applicator'' for ''he''.

Subsec. (q)(2)(A)(i). Pub. L. 102–237, § 1006(a)(2), substituted ''size or form'' for ''size of form''.

1988—Subsec. (c). Pub. L. 100–532, § 801(a)(1), substituted ''if—'' for ''if:''.

Subsec. (p)(2)(B). Pub. L. 100–532, § 801(a)(2), substituted ''Health and Human Services'' for ''Health, Education, and Welfare''.

Subsec. (q)(2)(A). Pub. L. 100–532, § 801(a)(3), substituted ''if—'' for ''if:''.

Subsec. (q)(2)(C)(iii). Pub. L. 100–532, § 801(a)(4), substituted '', except that'' for '': *Provided*, That''.

Subsec. (u). Pub. L. 100–532, § 801(a)(5), substituted '', except that'' for '': *Provided*, That'', struck out ''(1)(a)'' after ''include any article'' and ''or (b)'' after ''section 321(w) of title 21,'', and substituted ''Health and Human Services'' for ''Health, Education, and Welfare'', ''or that is'' for ''or (2) that is'', and ''a new animal drug'' for ''an article covered by clause (1) of this proviso''.

Subsec. (ee). Pub. L. 100–532, §§ 601(a)(1), 801(a)(6), substituted '', except that'' for '': *Provided*, That'', inserted ''unless the labeling specifically prohibits deviation from the specified dosage, concentration, or frequency'' and ''unless the labeling specifically states that the product may be applied only by the methods specified on the labeling'', substituted ''labeling, (4) mixing'' for ''labeling, or (4) mixing'', '', (5)'' for '': *Provided further*, That the term also shall not include'', ''or (6) any use'' for ''or any use'', and ''. After'' for '': *And provided further*, That after''.

Subsec. (ff). Pub. L. 100–532, § 101, added subsec. (ff).

Subsec. (gg). Pub. L. 100–532, § 601(a)(2), added subsec. (gg).

1978—Subsec. (e)(1). Pub. L. 95–396, § 1(1), inserted provision deeming an applicator not a seller or distributor of pesticides when providing a service of controlling pests.

Subsec. (e)(3). Pub. L. 95–396, § 1(2), substituted ''an applicator'' for ''a certified applicator''.

Case: 26-298, 08/21/2026, DktEntry: 31.2, (10 of 37)



Subsec. (q)(1)(H). Pub. L. 95–396, § 1(3), added subpar. (H).

Subsec. (w). Pub. L. 95–396, § 1(4), (5), amended definition of "producer" and "produce" to include reference to active ingredient used in producing a pesticide and inserted provision that an individual did not become a producer when there was dilution of a pesticide for personal use according to directions on registered labels.

Subsec. (dd). Pub. L. 95–396, § 1(6), inserted "or active ingredient used in producing a pesticide".

Subsec. (ee). Pub. L. 95–396, § 1(7), added subsec. (ee).

1975—Subsec. (u). Pub. L. 94–140 inserted proviso which excluded from term "pesticide" any article designated as "new animal drug" and any article denominated as animal feed.

1973—Subsec. (*l*). Pub. L. 93–205 substituted "or threatened by the Secretary pursuant to the Endangered Species Act of 1973" for "by the Secretary of the Interior under Public Law 91–135".

**Statutory Notes and Related Subsidiaries**

EFFECTIVE DATE OF 1988 AMENDMENT

Pub. L. 100–532, title IX, § 901, Oct. 25, 1988, 102 Stat. 2688, provided that: "Except as otherwise provided in this Act, the amendments made by this Act [see Short Title of 1988 Amendment note below] shall take effect on the expiration of 60 days after the date of enactment of this Act [Oct. 25, 1988]."

EFFECTIVE DATE OF 1973 AMENDMENT

Amendment by Pub. L. 93–205 effective Dec. 28, 1973, see section 16 of Pub. L. 93–205, set out as an Effective Date note under section 1531 of Title 16, Conservation.

EFFECTIVE DATE

Pub. L. 92–516, § 4, Oct. 21, 1972, 86 Stat. 998, as amended by Pub. L. 94–140, § 4, Nov. 28, 1975, 89 Stat. 752; Pub. L. 95–396, § 28, Sept. 30, 1978, 92 Stat. 842, provided that:

"(a) Except as otherwise provided in the Federal Insecticide, Fungicide, and Rodenticide Act [this subchapter], as amended by this Act and as otherwise provided by this section, the amendments made by this Act [see Short Title note set out below] shall take effect at the close of the date of the enactment of this Act [Oct. 21, 1972], provided if regulations are necessary for the implementation of any provision that becomes effective on the date of enactment, such regulations shall be promulgated and shall become effective within 90 days from the date of enactment of this Act.

"(b) The provisions of the Federal Insecticide, Fungicide, and Rodenticide Act [this subchapter] and the regulations thereunder as such existed prior to the enactment of this Act shall remain in effect until superseded by the amendments made by this Act and regulations thereunder.

"(c)(1) Two years after the enactment of this Act the Administrator shall have promulgated regulations providing for the registration and classification of pesticides under the provisions of this Act and thereafter shall register all new applications under such provisions.

"(2) Any requirements that a pesticide be registered for use only by a certified applicator shall not be effective until five years from the date of enactment of this Act.

"(3) A period of five years from date of enactment shall be provided for certification of applicators.

"(A) One year after the enactment of this Act the Administrator shall have prescribed the standards for the certification of applicators.

"(B) Each State desiring to certify applicators shall submit a State plan to the Administrator for the purpose provided by section 4(b).

"(C) As promptly as possible but in no event more than one year after submission of a State plan, the Administrator shall approve the State plan or disapprove it and indicate the reasons for disapproval. Consideration of plans resubmitted by States shall be expedited.

"(4) One year after the enactment of this Act the Administrator shall have promulgated and shall make effective regulations relating to the registration of establishments, permits for experimental use, and the keeping of books and records under the provisions of this Act.

"(d) No person shall be subject to any criminal or civil penalty imposed by the Federal Insecticide, Fungicide, and Rodenticide Act, as amended by this Act, for any act (or failure to act) occurring before the expiration of 60 days after the Administrator has published effective regulations in the Federal Register and taken such other action as may be necessary to permit compliance with the provisions under which the penalty is to be imposed.

"(e) For purposes of determining any criminal or civil penalty or liability to any third person in respect of any act or omission occurring before the expiration of the periods referred to in this section, the Federal Insecticide, Fungicide, and Rodenticide Act shall be treated as continuing in effect as if this Act had not been enacted."

SHORT TITLE OF 2022 AMENDMENT

Pub. L. 117–328, div. HH, title VI, § 701, Dec. 29, 2022, 136 Stat. 5996, provided that: "This title [amending sections 136a, 136a–1, and 136w–8 of this title and section 346a of Title 21, Food and Drugs, and enacting provisions set out as notes under sections 136a, 136a–1, and 136w of this title] may be cited as the 'Pesticide Registration Improvement Act of 2022'."

SHORT TITLE OF 2019 AMENDMENT

Pub. L. 116–8, § 1(a), Mar. 8, 2019, 133 Stat. 484, provided that: "This Act [amending sections 136a–1, 136c, and 136w–8 of this title and section 346a of Title 21, Food and Drugs, and enacting provisions set out as a note under section 136w of this title] may be cited as the 'Pesticide Registration Improvement Extension Act of 2018'."

SHORT TITLE OF 2012 AMENDMENT

Pub. L. 112–177, § 1, Sept. 28, 2012, 126 Stat. 1327, provided that: "This Act [amending sections 136a–1 and 136w–8 of this title and section 346a of Title 21, Food and Drugs, and enacting provisions set out as notes under section 136a–1 of this title] may be cited as the 'Pesticide Registration Improvement Extension Act of 2012'."

SHORT TITLE OF 2007 AMENDMENT

Pub. L. 110–94, § 1, Oct. 9, 2007, 121 Stat. 1000, provided that: "This Act [amending sections 136a, 136a–1, and 136w–8 of this title and section 346a of Title 21, Food and Drugs, and enacting provisions set out as a note under section 136a of this title] may be cited as the 'Pesticide Registration Improvement Renewal Act'."

SHORT TITLE OF 2004 AMENDMENT

Pub. L. 108–199, div. G, title V, § 501(a), Jan. 23, 2004, 118 Stat. 419, provided that: "This section [enacting section 136w–8 of this title, amending sections 136a, 136a–1, 136x, and 136y of this title, and enacting provisions set out as notes under section 136a of this title and section 346a of Title 21, Food and Drugs] may be cited as the 'Pesticide Registration Improvement Act of 2003'."

SHORT TITLE OF 1996 AMENDMENT

Pub. L. 104–170, § 1, Aug. 3, 1996, 110 Stat. 1489, provided that: "This Act [enacting sections 136i–2, 136r–1, and 136w–5 to 136w–7 of this title, amending this section, sections 136a, 136a–1, 136d, 136q, 136s, 136w, 136w–3, 136x, and 136y of this title, and sections 321, 331, 333, 342, and 346a of Title 21, Food and Drugs, and enacting provisions set out as notes under section 136i–2 of this title and sections 301 and 346a of Title 21] may be cited as the 'Food Quality Protection Act of 1996'."

[Another Food Quality Protection Act of 1996 was enacted by Pub. L. 104–170, title IV, 110 Stat. 1513, see section 401(a) of Pub. L. 104–170, set out as a note under section 301 of Title 21, Food and Drugs.]

SHORT TITLE OF 1988 AMENDMENT

Pub. L. 100–532, § 1(a), Oct. 25, 1988, 102 Stat. 2654, provided that: "This Act [enacting section 136a–1 of this title, amending this section and sections 136a to 136d, 136f to 136q, 136s, 136v to 136w–2, and 136y of this title, and enacting provisions set out as notes under this section and sections 136m and 136y of this title] may be cited as the 'Federal Insecticide, Fungicide, and Rodenticide Act Amendments of 1988'."

SHORT TITLE OF 1978 AMENDMENT

Pub. L. 95–396, § 29, Sept. 30, 1978, 92 Stat. 842, provided that: "This Act [enacting sections 136w–1 to 136w–4 of this title, amending this section and sections 136a to 136f, 136h, 136j, 136*l*, 136*o*, 136q, 136r, 136u to 136w, 136x, and 136y of this title, enacting provisions set out as notes under sections 136a, 136*o*, and 136w–4 of this title, and amending provisions set out as a note under this section] may be cited as the 'Federal Pesticide Act of 1978'."

SHORT TITLE

Pub. L. 92–516, § 1, Oct. 21, 1972, 86 Stat. 973, provided: "That this Act [amending this subchapter generally, enacting notes set out under this section, and amending sections 1261 and 1471 of Title 15, Commerce and Trade, and sections 321 and 346a of Title 21, Foods and Drugs] may be cited as the 'Federal Environmental Pesticide Control Act of 1972'."

Act June 25, 1947, ch. 125, § 1(a), as added by Pub. L. 92–516, § 2, Oct. 21, 1972, 86 Stat. 973, provided that: "This Act [enacting this subchapter] may be cited as the 'Federal Insecticide, Fungicide, and Rodenticide Act'."

**Executive Documents**

TERMINATION OF TRUST TERRITORY OF THE PACIFIC ISLANDS

For termination of Trust Territory of the Pacific Islands, see note set out preceding section 1681 of Title 48, Territories and Insular Possessions.

FEDERAL COMPLIANCE WITH POLLUTION CONTROL STANDARDS

For provisions relating to the responsibility of the head of each Executive agency for compliance with applicable pollution control standards, see Ex. Ord. No. 12088, Oct. 13, 1978, 43 F.R. 47707, set out as a note under section 4321 of Title 42, The Public Health and Welfare.

## § 136a. Registration of pesticides

### (a) Requirement of registration

Except as provided by this subchapter, no person in any State may distribute or sell to any person any pesticide that is not registered under this subchapter. To the extent necessary to prevent unreasonable adverse effects on the environment, the Administrator may by regulation limit the distribution, sale, or use in any State of any pesticide that is not registered under this subchapter and that is not the subject of an experimental use permit under section 136c of this title or an emergency exemption under section 136p of this title.

### (b) Exemptions

A pesticide which is not registered with the Administrator may be transferred if—

(1) the transfer is from one registered establishment to another registered establishment operated by the same producer solely for packaging at the second establishment or for use as a constituent part of another pesticide produced at the second establishment; or

(2) the transfer is pursuant to and in accordance with the requirements of an experimental use permit.

### (c) Procedure for registration

#### (1) Statement required

Each applicant for registration of a pesticide shall file with the Administrator a statement which includes—

(A) the name and address of the applicant and of any other person whose name will appear on the labeling;

(B) the name of the pesticide;

(C) a complete copy of the labeling of the pesticide, a statement of all claims to be made for it, and any directions for its use;

(D) the complete formula of the pesticide;

(E) a request that the pesticide be classified for general use or for restricted use, or for both; and

(F) except as otherwise provided in paragraph (2)(D), if requested by the Administrator, a full description of the tests made and the results thereof upon which the claims are based, or alternatively a citation to data that appear in the public literature or that previously had been submitted to the Administrator and that the Administrator may consider in accordance with the following provisions:

(i) With respect to pesticides containing active ingredients that are initially registered under this subchapter after September 30, 1978, data submitted to support the application for the original registration of the pesticide, or an application for an amendment adding any new use to the registration and that pertains solely to such new use, shall not, without the written permission of the original data submitter, be considered by the Administrator to support an application by another person during a period of ten years following the date the Administrator first registers the pesticide, except that such permission shall not be required in the case of defensive data.

(ii) The period of exclusive data use provided under clause (i) shall be extended 1 additional year for each 3 minor uses registered after August 3, 1996, and within 7 years of the commencement of the exclusive use period, up to a total of 3 additional years for all minor uses registered by the Administrator if the Administrator, in consultation with the Secretary of Agriculture, determines that, based on information provided by an applicant for registration or a registrant, that—

(I) there are insufficient efficacious alternative registered pesticides available for the use;

(II) the alternatives to the minor use pesticide pose greater risks to the environment or human health;

(III) the minor use pesticide plays or will play a significant part in managing pest resistance; or

[Another Food Quality Protection Act of 1996 was enacted by Pub. L. 104–170, title IV, 110 Stat. 1513, see section 401(a) of Pub. L. 104–170, set out as a note under section 301 of Title 21, Food and Drugs.]

SHORT TITLE OF 1988 AMENDMENT

Pub. L. 100–532, §1(a), Oct. 25, 1988, 102 Stat. 2654, provided that: ''This Act [enacting section 136a–1 of this title, amending this section and sections 136a to 136d, 136f to 136q, 136s, 136v to 136w–2, and 136y of this title, and enacting provisions set out as notes under this section and sections 136m and 136y of this title] may be cited as the 'Federal Insecticide, Fungicide, and Rodenticide Act Amendments of 1988'.''

SHORT TITLE OF 1978 AMENDMENT

Pub. L. 95–396, §29, Sept. 30, 1978, 92 Stat. 842, provided that: ''This Act [enacting sections 136w–1 to 136w–4 of this title, amending this section and sections 136a to 136f, 136h, 136j, 136*l*, 136*o*, 136q, 136r, 136u to 136w, 136x, and 136y of this title, enacting provisions set out as notes under sections 136a, 136*o*, and 136w–4 of this title, and amending provisions set out as a note under this section] may be cited as the 'Federal Pesticide Act of 1978'.''

SHORT TITLE

Pub. L. 92–516, §1, Oct. 21, 1972, 86 Stat. 973, provided: ''That this Act [amending this subchapter generally, enacting notes set out under this section, and amending sections 1261 and 1471 of Title 15, Commerce and Trade, and sections 321 and 346a of Title 21, Foods and Drugs] may be cited as the 'Federal Environmental Pesticide Control Act of 1972'.''

Act June 25, 1947, ch. 125, §1(a), as added by Pub. L. 92–516, §2, Oct. 21, 1972, 86 Stat. 973, provided that: ''This Act [enacting this subchapter] may be cited as the 'Federal Insecticide, Fungicide, and Rodenticide Act'.''

**Executive Documents**

TERMINATION OF TRUST TERRITORY OF THE PACIFIC ISLANDS

For termination of Trust Territory of the Pacific Islands, see note set out preceding section 1681 of Title 48, Territories and Insular Possessions.

FEDERAL COMPLIANCE WITH POLLUTION CONTROL STANDARDS

For provisions relating to the responsibility of the head of each Executive agency for compliance with applicable pollution control standards, see Ex. Ord. No. 12088, Oct. 13, 1978, 43 F.R. 47707, set out as a note under section 4321 of Title 42, The Public Health and Welfare.

## § 136a. Registration of pesticides

### (a) Requirement of registration

Except as provided by this subchapter, no person in any State may distribute or sell to any person any pesticide that is not registered under this subchapter. To the extent necessary to prevent unreasonable adverse effects on the environment, the Administrator may by regulation limit the distribution, sale, or use in any State of any pesticide that is not registered under this subchapter and that is not the subject of an experimental use permit under section 136c of this title or an emergency exemption under section 136p of this title.

### (b) Exemptions

A pesticide which is not registered with the Administrator may be transferred if—

(1) the transfer is from one registered establishment to another registered establishment operated by the same producer solely for packaging at the second establishment or for use as a constituent part of another pesticide produced at the second establishment; or

(2) the transfer is pursuant to and in accordance with the requirements of an experimental use permit.

### (c) Procedure for registration

#### (1) Statement required

Each applicant for registration of a pesticide shall file with the Administrator a statement which includes—

(A) the name and address of the applicant and of any other person whose name will appear on the labeling;

(B) the name of the pesticide;

(C) a complete copy of the labeling of the pesticide, a statement of all claims to be made for it, and any directions for its use;

(D) the complete formula of the pesticide;

(E) a request that the pesticide be classified for general use or for restricted use, or for both; and

(F) except as otherwise provided in paragraph (2)(D), if requested by the Administrator, a full description of the tests made and the results thereof upon which the claims are based, or alternatively a citation to data that appear in the public literature or that previously had been submitted to the Administrator and that the Administrator may consider in accordance with the following provisions:

(i) With respect to pesticides containing active ingredients that are initially registered under this subchapter after September 30, 1978, data submitted to support the application for the original registration of the pesticide, or an application for an amendment adding any new use to the registration and that pertains solely to such new use, shall not, without the written permission of the original data submitter, be considered by the Administrator to support an application by another person during a period of ten years following the date the Administrator first registers the pesticide, except that such permission shall not be required in the case of defensive data.

(ii) The period of exclusive data use provided under clause (i) shall be extended 1 additional year for each 3 minor uses registered after August 3, 1996, and within 7 years of the commencement of the exclusive use period, up to a total of 3 additional years for all minor uses registered by the Administrator if the Administrator, in consultation with the Secretary of Agriculture, determines that, based on information provided by an applicant for registration or a registrant, that—

(I) there are insufficient efficacious alternative registered pesticides available for the use;

(II) the alternatives to the minor use pesticide pose greater risks to the environment or human health;

(III) the minor use pesticide plays or will play a significant part in managing pest resistance; or

(IV) the minor use pesticide plays or will play a significant part in an integrated pest management program.

The registration of a pesticide for a minor use on a crop grouping established by the Administrator shall be considered for purposes of this clause 1 minor use for each representative crop for which data are provided in the crop grouping. Any additional exclusive use period under this clause shall be modified as appropriate or terminated if the registrant voluntarily cancels the product or deletes from the registration the minor uses which formed the basis for the extension of the additional exclusive use period or if the Administrator determines that the registrant is not actually marketing the product for such minor uses.

(iii) Except as otherwise provided in clause (i), with respect to data submitted after December 31, 1969, by an applicant or registrant to support an application for registration, experimental use permit, or amendment adding a new use to an existing registration, to support or maintain in effect an existing registration, or for reregistration, the Administrator may, without the permission of the original data submitter, consider any such item of data in support of an application by any other person (hereinafter in this subparagraph referred to as the ''applicant'') within the fifteen-year period following the date the data were originally submitted only if the applicant has made an offer to compensate the original data submitter and submitted such offer to the Administrator accompanied by evidence of delivery to the original data submitter of the offer. The terms and amount of compensation may be fixed by agreement between the original data submitter and the applicant, or, failing such agreement, binding arbitration under this subparagraph. If, at the end of ninety days after the date of delivery to the original data submitter of the offer to compensate, the original data submitter and the applicant have neither agreed on the amount and terms of compensation nor on a procedure for reaching an agreement on the amount and terms of compensation, either person may initiate binding arbitration proceedings by requesting the Federal Mediation and Conciliation Service to appoint an arbitrator from the roster of arbitrators maintained by such Service. The procedure and rules of the Service shall be applicable to the selection of such arbitrator and to such arbitration proceedings, and the findings and determination of the arbitrator shall be final and conclusive, and no official or court of the United States shall have power or jurisdiction to review any such findings and determination, except for fraud, misrepresentation, or other misconduct by one of the parties to the arbitration or the arbitrator where there is a verified complaint with supporting affidavits attesting to specific instances of such fraud, misrepresentation, or other misconduct. The parties to the arbitration shall share equally in the payment of the fee and expenses of the arbitrator. If the Administrator determines that an original data submitter has failed to participate in a procedure for reaching an agreement or in an arbitration proceeding as required by this subparagraph, or failed to comply with the terms of an agreement or arbitration decision concerning compensation under this subparagraph, the original data submitter shall forfeit the right to compensation for the use of the data in support of the application. Notwithstanding any other provision of this subchapter, if the Administrator determines that an applicant has failed to participate in a procedure for reaching an agreement or in an arbitration proceeding as required by this subparagraph, or failed to comply with the terms of an agreement or arbitration decision concerning compensation under this subparagraph, the Administrator shall deny the application or cancel the registration of the pesticide in support of which the data were used without further hearing. Before the Administrator takes action under either of the preceding two sentences, the Administrator shall furnish to the affected person, by certified mail, notice of intent to take action and allow fifteen days from the date of delivery of the notice for the affected person to respond. If a registration is denied or canceled under this subparagraph, the Administrator may make such order as the Administrator deems appropriate concerning the continued sale and use of existing stocks of such pesticide. Registration action by the Administrator shall not be delayed pending the fixing of compensation.

(iv) After expiration of any period of exclusive use and any period for which compensation is required for the use of an item of data under clauses (i), (ii), and (iii), the Administrator may consider such item of data in support of an application by any other applicant without the permission of the original data submitter and without an offer having been received to compensate the original data submitter for the use of such item of data.

(v) The period of exclusive use provided under clause (ii) shall not take effect until 1 year after August 3, 1996, except where an applicant or registrant is applying for the registration of a pesticide containing an active ingredient not previously registered.

(vi) With respect to data submitted after August 3, 1996, by an applicant or registrant to support an amendment adding a new use to an existing registration that does not retain any period of exclusive use, if such data relates solely to a minor use of a pesticide, such data shall not, without the written permission of the original data submitter, be considered by the Administrator to support an application for a minor use by another person during the pe-

riod of 10 years following the date of submission of such data. The applicant or registrant at the time the new minor use is requested shall notify the Administrator that to the best of their knowledge the exclusive use period for the pesticide has expired and that the data pertaining solely to the minor use of a pesticide is eligible for the provisions of this paragraph. If the minor use registration which is supported by data submitted pursuant to this subsection is voluntarily canceled or if such data are subsequently used to support a nonminor use, the data shall no longer be subject to the exclusive use provisions of this clause but shall instead be considered by the Administrator in accordance with the provisions of clause (i), as appropriate.

(G) If the applicant is requesting that the registration or amendment to the registration of a pesticide be expedited, an explanation of the basis for the request must be submitted, in accordance with paragraph (10) of this subsection.

**(2) Data in support of registration**

**(A) In general**

The Administrator shall publish guidelines specifying the kinds of information which will be required to support the registration of a pesticide and shall revise such guidelines from time to time. If thereafter the Administrator requires any additional kind of information under subparagraph (B) of this paragraph, the Administrator shall permit sufficient time for applicants to obtain such additional information. The Administrator, in establishing standards for data requirements for the registration of pesticides with respect to minor uses, shall make such standards commensurate with the anticipated extent of use, pattern of use, the public health and agricultural need for such minor use, and the level and degree of potential beneficial or adverse effects on man and the environment. The Administrator shall not require a person to submit, in relation to a registration or reregistration of a pesticide for minor agricultural use under this subchapter, any field residue data from a geographic area where the pesticide will not be registered for such use. In the development of these standards, the Administrator shall consider the economic factors of potential national volume of use, extent of distribution, and the impact of the cost of meeting the requirements on the incentives for any potential registrant to undertake the development of the required data. Except as provided by section 136h of this title, within 30 days after the Administrator registers a pesticide under this subchapter the Administrator shall make available to the public the data called for in the registration statement together with such other scientific information as the Administrator deems relevant to the Administrator's decision.

**(B) Additional data**

(i) If the Administrator determines that additional data are required to maintain in effect an existing registration of a pesticide, the Administrator shall notify all existing registrants of the pesticide to which the determination relates and provide a list of such registrants to any interested person.

(ii) Each registrant of such pesticide shall provide evidence within ninety days after receipt of notification that it is taking appropriate steps to secure the additional data that are required. Two or more registrants may agree to develop jointly, or to share in the cost of developing, such data if they agree and advise the Administrator of their intent within ninety days after notification. Any registrant who agrees to share in the cost of producing the data shall be entitled to examine and rely upon such data in support of maintenance of such registration. The Administrator shall issue a notice of intent to suspend the registration of a pesticide in accordance with the procedures prescribed by clause (iv) if a registrant fails to comply with this clause.

(iii) If, at the end of sixty days after advising the Administrator of their agreement to develop jointly, or share in the cost of developing, data, the registrants have not further agreed on the terms of the data development arrangement or on a procedure for reaching such agreement, any of such registrants may initiate binding arbitration proceedings by requesting the Federal Mediation and Conciliation Service to appoint an arbitrator from the roster of arbitrators maintained by such Service. The procedure and rules of the Service shall be applicable to the selection of such arbitrator and to such arbitration proceedings, and the findings and determination of the arbitrator shall be final and conclusive, and no official or court of the United States shall have power or jurisdiction to review any such findings and determination, except for fraud, misrepresentation, or other misconduct by one of the parties to the arbitration or the arbitrator where there is a verified complaint with supporting affidavits attesting to specific instances of such fraud, misrepresentation, or other misconduct. All parties to the arbitration shall share equally in the payment of the fee and expenses of the arbitrator. The Administrator shall issue a notice of intent to suspend the registration of a pesticide in accordance with the procedures prescribed by clause (iv) if a registrant fails to comply with this clause.

(iv) Notwithstanding any other provision of this subchapter, if the Administrator determines that a registrant, within the time required by the Administrator, has failed to take appropriate steps to secure the data required under this subparagraph, to participate in a procedure for reaching agreement concerning a joint data development arrangement under this subparagraph or in an arbitration proceeding as required by this subparagraph, or to comply with the terms of an agreement or arbitration decision concerning a joint data development arrangement under this subparagraph, the Administrator may issue a notice of intent to sus-

pend such registrant's registration of the pesticide for which additional data is required. The Administrator may include in the notice of intent to suspend such provisions as the Administrator deems appropriate concerning the continued sale and use of existing stocks of such pesticide. Any suspension proposed under this subparagraph shall become final and effective at the end of thirty days from receipt by the registrant of the notice of intent to suspend, unless during that time a request for hearing is made by a person adversely affected by the notice or the registrant has satisfied the Administrator that the registrant has complied fully with the requirements that served as a basis for the notice of intent to suspend. If a hearing is requested, a hearing shall be conducted under section 136d(d) of this title. The only matters for resolution at that hearing shall be whether the registrant has failed to take the action that served as the basis for the notice of intent to suspend the registration of the pesticide for which additional data is required, and whether the Administrator's determination with respect to the disposition of existing stocks is consistent with this subchapter. If a hearing is held, a decision after completion of such hearing shall be final. Notwithstanding any other provision of this subchapter, a hearing shall be held and a determination made within seventy-five days after receipt of a request for such hearing. Any registration suspended under this subparagraph shall be reinstated by the Administrator if the Administrator determines that the registrant has complied fully with the requirements that served as a basis for the suspension of the registration.

(v) Any data submitted under this subparagraph shall be subject to the provisions of paragraph (1)(D). Whenever such data are submitted jointly by two or more registrants, an agent shall be agreed on at the time of the joint submission to handle any subsequent data compensation matters for the joint submitters of such data.

(vi) Upon the request of a registrant the Administrator shall, in the case of a minor use, extend the deadline for the production of residue chemistry data under this subparagraph for data required solely to support that minor use until the final deadline for submission of data under section 136a–1 of this title for the other uses of the pesticide established as of August 3, 1996, if—

(I) the data to support other uses of the pesticide on a food are being provided;

(II) the registrant, in submitting a request for such an extension, provides a schedule, including interim dates to measure progress, to assure that the data production will be completed before the expiration of the extension period;

(III) the Administrator has determined that such extension will not significantly delay the Administrator's schedule for issuing a reregistration eligibility determination required under section 136a–1 of this title; and

(IV) the Administrator has determined that based on existing data, such extension would not significantly increase the risk of any unreasonable adverse effect on the environment. If the Administrator grants an extension under this clause, the Administrator shall monitor the development of the data and shall ensure that the registrant is meeting the schedule for the production of the data. If the Administrator determines that the registrant is not meeting or has not met the schedule for the production of such data, the Administrator may proceed in accordance with clause (iv) regarding the continued registration of the affected products with the minor use and shall inform the public of such action. Notwithstanding the provisions of this clause, the Administrator may take action to modify or revoke the extension under this clause if the Administrator determines that the extension for the minor use may cause an unreasonable adverse effect on the environment. In such circumstance, the Administrator shall provide, in writing to the registrant, a notice revoking the extension of time for submission of data. Such data shall instead be due in accordance with the date established by the Administrator for the submission of the data.

(vii) If the registrant does not commit to support a specific minor use of the pesticide, but is supporting and providing data in a timely and adequate fashion to support uses of the pesticide on a food, or if all uses of the pesticide are nonfood uses and the registrant does not commit to support a specific minor use of the pesticide but is supporting and providing data in a timely and adequate fashion to support other nonfood uses of the pesticide, the Administrator, at the written request of the registrant, shall not take any action pursuant to this clause in regard to such unsupported minor use until the final deadline established as of August 3, 1996, for the submission of data under section 136a–1 of this title for the supported uses identified pursuant to this clause unless the Administrator determines that the absence of the data is significant enough to cause human health or environmental concerns. On the basis of such determination, the Administrator may refuse the request for extension by the registrant. Upon receipt of the request from the registrant, the Administrator shall publish in the Federal Register a notice of the receipt of the request and the effective date upon which the uses not being supported will be voluntarily deleted from the registration pursuant to section 136d(f)(1) of this title. If the Administrator grants an extension under this clause, the Administrator shall monitor the development of the data for the uses being supported and shall ensure that the registrant is meeting the schedule for the production of such data. If the Administrator determines that the registrant is not meeting or has not met the schedule for the production of such data, the Administrator may proceed in ac-

Case: 26-298, 08/21/2026, DktEntry: 31.2, (16 of 37)



cordance with clause (iv) of this subparagraph regarding the continued registration of the affected products with the minor and other uses and shall inform the public of such action in accordance with section 136d(f)(2) of this title. Notwithstanding the provisions of this clause, the Administrator may deny, modify, or revoke the temporary extension under this subparagraph if the Administrator determines that the continuation of the minor use may cause an unreasonable adverse effect on the environment. In the event of modification or revocation, the Administrator shall provide, in writing, to the registrant a notice revoking the temporary extension and establish a new effective date by which the minor use shall be deleted from the registration.

(viii)(I) If data required to support registration of a pesticide under subparagraph (A) is requested by a Federal or State regulatory authority, the Administrator shall, to the extent practicable, coordinate data requirements, test protocols, timetables, and standards of review and reduce burdens and redundancy caused to the registrant by multiple requirements on the registrant.

(II) The Administrator may enter into a cooperative agreement with a State to carry out subclause (I).

(III) Not later than 1 year after August 3, 1996, the Administrator shall develop a process to identify and assist in alleviating future disparities between Federal and State data requirements.

**(C) Simplified procedures**

Within nine months after September 30, 1978, the Administrator shall, by regulation, prescribe simplified procedures for the registration of pesticides, which shall include the provisions of subparagraph (D) of this paragraph.

**(D) Exemption**

No applicant for registration of a pesticide who proposes to purchase a registered pesticide from another producer in order to formulate such purchased pesticide into the pesticide that is the subject of the application shall be required to—

(i) submit or cite data pertaining to such purchased product; or

(ii) offer to pay reasonable compensation otherwise required by paragraph (1)(D) of this subsection for the use of any such data.

**(E) Minor use waiver**

In handling the registration of a pesticide for a minor use, the Administrator may waive otherwise applicable data requirements if the Administrator determines that the absence of such data will not prevent the Administrator from determining—

(i) the incremental risk presented by the minor use of the pesticide; and

(ii) that such risk, if any, would not be an unreasonable adverse effect on the environment.

**(3) Application**

**(A) In general**

The Administrator shall review the data after receipt of the application and shall, as expeditiously as possible, either register the pesticide in accordance with paragraph (5), or notify the applicant of the Administrator's determination that it does not comply with the provisions of the subchapter in accordance with paragraph (6).

**(B) Identical or substantially similar**

(i) The Administrator shall, as expeditiously as possible, review and act on any application received by the Administrator that—

(I) proposes the initial or amended registration of an end-use pesticide that, if registered as proposed, would be identical or substantially similar in composition and labeling to a currently-registered pesticide identified in the application, or that would differ in composition and labeling from such currently-registered pesticide only in ways that would not significantly increase the risk of unreasonable adverse effects on the environment; or

(II) proposes an amendment to the registration of a registered pesticide that does not require scientific review of data.

(ii) In expediting the review of an application for an action described in clause (i), the Administrator shall—

(I) review the application in accordance with section 136w–8(f)(4)(B) of this title and, if the application is found to be incomplete, reject the application;

(II) not later than the applicable decision review time established pursuant to section 136w–8(f)(4)(B) of this title, or, if no review time is established, not later than 90 days after receiving a complete application, notify the registrant if the application has been granted or denied; and

(III) if the application is denied, notify the registrant in writing of the specific reasons for the denial of the application.

**(C) Minor use registration**

(i) The Administrator shall, as expeditiously as possible, review and act on any complete application—

(I) that proposes the initial registration of a new pesticide active ingredient if the active ingredient is proposed to be registered solely for minor uses, or proposes a registration amendment solely for minor uses to an existing registration; or

(II) for a registration or a registration amendment that proposes significant minor uses.

(ii) For the purposes of clause (i)—

(I) the term "as expeditiously as possible" means that the Administrator shall, to the greatest extent practicable, complete a review and evaluation of all data, submitted with a complete application, within 12 months after the submission of the complete application, and the failure of the Administrator to complete such a

review and evaluation under clause (i) shall not be subject to judicial review; and

(II) the term ''significant minor uses'' means 3 or more minor uses proposed for every nonminor use, a minor use that would, in the judgment of the Administrator, serve as a replacement for any use which has been canceled in the 5 years preceding the receipt of the application, or a minor use that in the opinion of the Administrator would avoid the reissuance of an emergency exemption under section 136p of this title for that minor use.

**(D) Adequate time for submission of minor use data**

If a registrant makes a request for a minor use waiver, regarding data required by the Administrator, pursuant to paragraph (2)(E), and if the Administrator denies in whole or in part such data waiver request, the registrant shall have a full-time period for providing such data. For purposes of this subparagraph, the term ''full-time period'' means the time period originally established by the Administrator for submission of such data, beginning with the date of receipt by the registrant of the Administrator's notice of denial.

**(4) Notice of application**

The Administrator shall publish in the Federal Register, promptly after receipt of the statement and other data required pursuant to paragraphs (1) and (2), a notice of each application for registration of any pesticide if it contains any new active ingredient or if it would entail a changed use pattern. The notice shall provide for a period of 30 days in which any Federal agency or any other interested person may comment.

**(5) Approval of registration**

The Administrator shall register a pesticide if the Administrator determines that, when considered with any restrictions imposed under subsection (d)—

(A) its composition is such as to warrant the proposed claims for it;

(B) its labeling and other material required to be submitted comply with the requirements of this subchapter;

(C) it will perform its intended function without unreasonable adverse effects on the environment; and

(D) when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment.

The Administrator shall not make any lack of essentiality a criterion for denying registration of any pesticide. Where two pesticides meet the requirements of this paragraph, one should not be registered in preference to the other. In considering an application for the registration of a pesticide, the Administrator may waive data requirements pertaining to efficacy, in which event the Administrator may register the pesticide without determining that the pesticide's composition is such as to warrant proposed claims of efficacy. If a pesticide is found to be efficacious by any State under section 136v(c) of this title, a presumption is established that the Administrator shall waive data requirements pertaining to efficacy for use of the pesticide in such State.

**(6) Denial of registration**

If the Administrator determines that the requirements of paragraph (5) for registration are not satisfied, the Administrator shall notify the applicant for registration of the Administrator's determination and of the Administrator's reasons (including the factual basis) therefor, and that, unless the applicant corrects the conditions and notifies the Administrator thereof during the 30-day period beginning with the day after the date on which the applicant receives the notice, the Administrator may refuse to register the pesticide. Whenever the Administrator refuses to register a pesticide, the Administrator shall notify the applicant of the Administrator's decision and of the Administrator's reasons (including the factual basis) therefor. The Administrator shall promptly publish in the Federal Register notice of such denial of registration and the reasons therefor. Upon such notification, the applicant for registration or other interested person with the concurrence of the applicant shall have the same remedies as provided for in section 136d of this title.

**(7) Registration under special circumstances**

Notwithstanding the provisions of paragraph (5)—

(A) The Administrator may conditionally register or amend the registration of a pesticide if the Administrator determines that (i) the pesticide and proposed use are identical or substantially similar to any currently registered pesticide and use thereof, or differ only in ways that would not significantly increase the risk of unreasonable adverse effects on the environment, and (ii) approving the registration or amendment in the manner proposed by the applicant would not significantly increase the risk of any unreasonable adverse effect on the environment. An applicant seeking conditional registration or amended registration under this subparagraph shall submit such data as would be required to obtain registration of a similar pesticide under paragraph (5). If the applicant is unable to submit an item of data because it has not yet been generated, the Administrator may register or amend the registration of the pesticide under such conditions as will require the submission of such data not later than the time such data are required to be submitted with respect to similar pesticides already registered under this subchapter.

(B) The Administrator may conditionally amend the registration of a pesticide to permit additional uses of such pesticide notwithstanding that data concerning the pesticide may be insufficient to support an unconditional amendment, if the Administrator determines that (i) the applicant has submitted satisfactory data pertaining to the proposed additional use, and (ii) amending the registration in the manner proposed by the applicant would not significantly in-

crease the risk of any unreasonable adverse effect on the environment. Notwithstanding the foregoing provisions of this subparagraph, no registration of a pesticide may be amended to permit an additional use of such pesticide if the Administrator has issued a notice stating that such pesticide, or any ingredient thereof, meets or exceeds risk criteria associated in whole or in part with human dietary exposure enumerated in regulations issued under this subchapter, and during the pendency of any risk-benefit evaluation initiated by such notice, if (I) the additional use of such pesticide involves a major food or feed crop, or (II) the additional use of such pesticide involves a minor food or feed crop and the Administrator determines, with the concurrence of the Secretary of Agriculture, there is available an effective alternative pesticide that does not meet or exceed such risk criteria. An applicant seeking amended registration under this subparagraph shall submit such data as would be required to obtain registration of a similar pesticide under paragraph (5). If the applicant is unable to submit an item of data (other than data pertaining to the proposed additional use) because it has not yet been generated, the Administrator may amend the registration under such conditions as will require the submission of such data not later than the time such data are required to be submitted with respect to similar pesticides already registered under this subchapter.

(C) The Administrator may conditionally register a pesticide containing an active ingredient not contained in any currently registered pesticide for a period reasonably sufficient for the generation and submission of required data (which are lacking because a period reasonably sufficient for generation of the data has not elapsed since the Administrator first imposed the data requirement) on the condition that by the end of such period the Administrator receives such data and the data do not meet or exceed risk criteria enumerated in regulations issued under this subchapter, and on such other conditions as the Administrator may prescribe. A conditional registration under this subparagraph shall be granted only if the Administrator determines that use of the pesticide during such period will not cause any unreasonable adverse effect on the environment, and that use of the pesticide is in the public interest.

**(8) Interim administrative review**

Notwithstanding any other provision of this subchapter, the Administrator may not initiate a public interim administrative review process to develop a risk-benefit evaluation of the ingredients of a pesticide or any of its uses prior to initiating a formal action to cancel, suspend, or deny registration of such pesticide, required under this subchapter, unless such interim administrative process is based on a validated test or other significant evidence raising prudent concerns of unreasonable adverse risk to man or to the environment. Notice of the definition of the terms ''validated test'' and ''other significant evidence'' as used herein shall be published by the Administrator in the Federal Register.

**(9) Labeling**

**(A) Additional statements**

Subject to subparagraphs (B) and (C), it shall not be a violation of this subchapter for a registrant to modify the labeling of an antimicrobial pesticide product to include relevant information on product efficacy, product composition, container composition or design, or other characteristics that do not relate to any pesticidal claim or pesticidal activity.

**(B) Requirements**

Proposed labeling information under subparagraph (A) shall not be false or misleading, shall not conflict with or detract from any statement required by law or the Administrator as a condition of registration, and shall be substantiated on the request of the Administrator.

**(C) Notification and disapproval**

**(i) Notification**

A registration may be modified under subparagraph (A) if—

(I) the registrant notifies the Administrator in writing not later than 60 days prior to distribution or sale of a product bearing the modified labeling; and

(II) the Administrator does not disapprove of the modification under clause (ii).

**(ii) Disapproval**

Not later than 30 days after receipt of a notification under clause (i), the Administrator may disapprove the modification by sending the registrant notification in writing stating that the proposed language is not acceptable and stating the reasons why the Administrator finds the proposed modification unacceptable.

**(iii) Restriction on sale**

A registrant may not sell or distribute a product bearing a disapproved modification.

**(iv) Objection**

A registrant may file an objection in writing to a disapproval under clause (ii) not later than 30 days after receipt of notification of the disapproval.

**(v) Final action**

A decision by the Administrator following receipt and consideration of an objection filed under clause (iv) shall be considered a final agency action.

**(D) Use dilution**

The label or labeling required under this subchapter for an antimicrobial pesticide that is or may be diluted for use may have a different statement of caution or protective measures for use of the recommended diluted solution of the pesticide than for use of a concentrate of the pesticide if the Administrator determines that—

(i) adequate data have been submitted to support the statement proposed for the diluted solution uses; and

(ii) the label or labeling provides adequate protection for exposure to the diluted solution of the pesticide.

**(10) Expedited registration of pesticides**

(A) Not later than 1 year after August 3, 1996, the Administrator shall, utilizing public comment, develop procedures and guidelines, and expedite the review of an application for registration of a pesticide or an amendment to a registration that satisfies such guidelines.

(B) Any application for registration or an amendment, including biological and conventional pesticides, will be considered for expedited review under this paragraph. An application for registration or an amendment shall qualify for expedited review if use of the pesticide proposed by the application may reasonably be expected to accomplish 1 or more of the following:

(i) Reduce the risks of pesticides to human health.

(ii) Reduce the risks of pesticides to nontarget organisms.

(iii) Reduce the potential for contamination of groundwater, surface water, or other valued environmental resources.

(iv) Broaden the adoption of integrated pest management strategies, or make such strategies more available or more effective.

(C) The Administrator, not later than 30 days after receipt of an application for expedited review, shall notify the applicant whether the application is complete. If it is found to be incomplete, the Administrator may either reject the request for expedited review or ask the applicant for additional information to satisfy the guidelines developed under subparagraph (A).

**(11) Interagency working group**

**(A) Definition of covered agency**

In this paragraph, the term ''covered agency'' means any of the following:

(i) The Department of Agriculture.

(ii) The Department of Commerce.

(iii) The Department of the Interior.

(iv) The Council on Environmental Quality.

(v) The Environmental Protection Agency.

**(B) Establishment**

The Administrator shall establish an interagency working group, to be comprised of representatives from each covered agency, to provide recommendations regarding, and to implement a strategy for improving, the consultation process required under section 7 of the Endangered Species Act of 1973 (16 U.S.C. 1536) for pesticide registration and registration review.

**(C) Duties**

The interagency working group established under subparagraph (B) shall—

(i) analyze relevant Federal law (including regulations) and case law for purposes of providing an outline of the legal and regulatory framework for the consultation process referred to in that subparagraph, including—

(I) requirements under this subchapter and the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.);

(II) Federal case law regarding the intersection of this subchapter and the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.); and

(III) Federal regulations relating to the pesticide consultation process;

(ii) provide advice regarding methods of—

(I) defining the scope of actions of the covered agencies that are subject to the consultation requirement referred to in subparagraph (B); and

(II) properly identifying and classifying effects of actions of the covered agencies with respect to that consultation requirement;

(iii) identify the obligations and limitations under Federal law of each covered agency for purposes of providing a legal and regulatory framework for developing the recommendations referred to in subparagraph (B);

(iv) review practices for the consultation referred to in subparagraph (B) to identify problem areas, areas for improvement, and best practices for conducting that consultation among the covered agencies;

(v) develop scientific and policy approaches to increase the accuracy and timeliness of the process for that consultation, in accordance with requirements of this subchapter and the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.), including—

(I) processes to efficiently share data and coordinate analyses among the Department of Agriculture, the Department of Commerce, the Department of the Interior, and the Environmental Protection Agency;

(II) a streamlined process for identifying which actions require no consultation, informal consultation, or formal consultation;

(III) an approach that will provide clarity with respect to what constitutes the best scientific and commercial data available in the fields of pesticide use and ecological risk assessment, pursuant to section 7(a)(2) of the Endangered Species Act of 1973 (16 U.S.C. 1536(a)(2)); and

(IV) approaches that enable the Environmental Protection Agency to better assist the Department of the Interior and the Department of Commerce in carrying out obligations under that section in a timely and efficient manner; and

(vi) propose and implement a strategy to implement approaches to consultations under the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.) and document that strategy in a memorandum of understanding, revised regulations, or another appropriate format to promote durable cooperation among the covered agencies.

**(D) Reports**

**(i) Progress reports**

**(I) In general**

Not later than 18 months after December 20, 2018, the Administrator, in coordination with the head of each other covered agency, shall submit to the Committee on Agriculture of the House of Representatives and the Committee on Agriculture, Nutrition, and Forestry of the Senate a report describing the progress of the working group in developing the recommendations under subparagraph (B).

**(II) Requirements**

The report under this clause shall—

(aa) reflect the perspectives of each covered agency; and

(bb) identify areas of new consensus and continuing topics of disagreement and debate.

**(ii) Results**

**(I) In general**

Not later than 1 year after December 20, 2018, the Administrator, in coordination with the head of each other covered agency, shall submit to the Committee on Agriculture of the House of Representatives and the Committee on Agriculture, Nutrition, and Forestry of the Senate a report describing—

(aa) the recommendations developed under subparagraph (B); and

(bb) plans for implementation of those recommendations.

**(II) Requirements**

The report under this clause shall—

(aa) reflect the perspectives of each covered agency; and

(bb) identify areas of consensus and continuing topics of disagreement and debate, if any.

**(iii) Implementation**

Not later than 1 year after the date of submission of the report under clause (i), the Administrator, in coordination with the head of each other covered agency, shall submit to the Committee on Agriculture of the House of Representatives and the Committee on Agriculture, Nutrition, and Forestry of the Senate a report describing—

(I) the implementation of the recommendations referred to in that clause;

(II) the extent to which that implementation improved the consultation process referred to in subparagraph (B); and

(III) any additional recommendations for improvements to the process described in subparagraph (B).

**(iv) Other reports**

Not later than the date that is 180 days after the date of submission of the report under clause (iii), and not less frequently than once every 180 days thereafter during the 5-year period beginning on that date, the Administrator, in coordination with the head of each other covered agency, shall submit to the Committee on Agriculture of the House of Representatives and the Committee on Agriculture, Nutrition, and Forestry of the Senate a report describing—

(I) the implementation of the recommendations referred to in that clause;

(II) the extent to which that implementation improved the consultation process referred to in subparagraph (B); and

(III) any additional recommendations for improvements to the process described in subparagraph (B).

**(E) Consultation with private sector**

In carrying out the duties under this paragraph, the working group shall, as appropriate—

(i) consult with, representatives of interested industry stakeholders and nongovernmental organizations; and

(ii) take into consideration factors, such as actual and potential differences in interest between, and the views of, those stakeholders and organizations.

**(F) Chapter 10 of title 5**

Chapter 10 of title 5 shall not apply to the working group established under this paragraph.

**(G) Savings clause**

Nothing in this paragraph supersedes any provision of—

(i) this subchapter; or

(ii) the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.), including the requirements under section 7 of that Act (16 U.S.C. 1536).

**(d) Classification of pesticides**

**(1) Classification for general use, restricted use, or both**

(A) As a part of the registration of a pesticide the Administrator shall classify it as being for general use or for restricted use. If the Administrator determines that some of the uses for which the pesticide is registered should be for general use and that other uses for which it is registered should be for restricted use, the Administrator shall classify it for both general use and restricted use. Pesticide uses may be classified by regulation on the initial classification, and registered pesticides may be classified prior to reregistration. If some of the uses of the pesticide are classified for general use, and other uses are classified for restricted use, the directions relating to its general uses shall be clearly separated and distinguished from those directions relating to its restricted uses. The Administrator may require that its packaging and labeling for restricted uses shall be clearly distinguishable from its packaging and labeling for general uses.

(B) If the Administrator determines that the pesticide, when applied in accordance with its directions for use, warnings and cautions and

for the uses for which it is registered, or for one or more of such uses, or in accordance with a widespread and commonly recognized practice, will not generally cause unreasonable adverse effects on the environment, the Administrator will classify the pesticide, or the particular use or uses of the pesticide to which the determination applies, for general use.

(C) If the Administrator determines that the pesticide, when applied in accordance with its directions for use, warnings and cautions and for the uses for which it is registered, or for one or more of such uses, or in accordance with a widespread and commonly recognized practice, may generally cause, without additional regulatory restrictions, unreasonable adverse effects on the environment, including injury to the applicator, the Administrator shall classify the pesticide, or the particular use or uses to which the determination applies, for restricted use:

(i) If the Administrator classifies a pesticide, or one or more uses of such pesticide, for restricted use because of a determination that the acute dermal or inhalation toxicity of the pesticide presents a hazard to the applicator or other persons, the pesticide shall be applied for any use to which the restricted classification applies only by or under the direct supervision of a certified applicator.

(ii) If the Administrator classifies a pesticide, or one or more uses of such pesticide, for restricted use because of a determination that its use without additional regulatory restriction may cause unreasonable adverse effects on the environment, the pesticide shall be applied for any use to which the determination applies only by or under the direct supervision of a certified applicator, or subject to such other restrictions as the Administrator may provide by regulation. Any such regulation shall be reviewable in the appropriate court of appeals upon petition of a person adversely affected filed within 60 days of the publication of the regulation in final form.

**(2) Change in classification**

If the Administrator determines that a change in the classification of any use of a pesticide from general use to restricted use is necessary to prevent unreasonable adverse effects on the environment, the Administrator shall notify the registrant of such pesticide of such determination at least forty-five days before making the change and shall publish the proposed change in the Federal Register. The registrant, or other interested person with the concurrence of the registrant, may seek relief from such determination under section 136d(b) of this title.

**(3) Change in classification from restricted use to general use**

The registrant of any pesticide with one or more uses classified for restricted use may petition the Administrator to change any such classification from restricted to general use. Such petition shall set out the basis for the registrant's position that restricted use classification is unnecessary because classification of the pesticide for general use would not cause unreasonable adverse effects on the environment. The Administrator, within sixty days after receiving such petition, shall notify the registrant whether the petition has been granted or denied. Any denial shall contain an explanation therefor and any such denial shall be subject to judicial review under section 136n of this title.

**(e) Products with same formulation and claims**

Products which have the same formulation, are manufactured by the same person, the labeling of which contains the same claims, and the labels of which bear a designation identifying the product as the same pesticide may be registered as a single pesticide; and additional names and labels shall be added to the registration by supplemental statements.

**(f) Miscellaneous**

**(1) Effect of change of labeling or formulation**

If the labeling or formulation for a pesticide is changed, the registration shall be amended to reflect such change if the Administrator determines that the change will not violate any provision of this subchapter.

**(2) Registration not a defense**

In no event shall registration of an article be construed as a defense for the commission of any offense under this subchapter. As long as no cancellation proceedings are in effect registration of a pesticide shall be prima facie evidence that the pesticide, its labeling and packaging comply with the registration provisions of the subchapter.

**(3) Authority to consult other Federal agencies**

In connection with consideration of any registration or application for registration under this section, the Administrator may consult with any other Federal agency.

**(4) Mixtures of nitrogen stabilizers and fertilizer products**

Any mixture or other combination of—

(A) 1 or more nitrogen stabilizers registered under this subchapter; and

(B) 1 or more fertilizer products,

shall not be subject to the provisions of this section or sections 136a–1, 136c, 136e, 136m, and 136*o*(a)(2) of this title if the mixture or other combination is accompanied by the labeling required under this subchapter for the nitrogen stabilizer contained in the mixture or other combination, the mixture or combination is mixed or combined in accordance with such labeling, and the mixture or combination does not contain any active ingredient other than the nitrogen stabilizer.

**(5) Bilingual labeling**

**(A) Requirement**

**(i) In general**

Subject to clause (ii), not later than the applicable deadline described in subparagraph (B), each registered pesticide product released for shipment shall include—

(I) the translation of the parts of the labeling contained in the Spanish Trans-

lation Guide described in subparagraph (G) on the product container; or

(II) a link to such translation via scannable technology or other electronic methods readily accessible on the product label.

**(ii) Exceptions**

Notwithstanding clause (i)—

(I) an antimicrobial pesticide product may, in lieu of including a translation or a link under clause (i), provide a link to the safety data sheets in Spanish via scannable technology or other electronic methods readily accessible on the product label; or

(II) a non-agricultural pesticide product that is not classified by the Administrator as restricted use under subsection (d)(1)(A) may, in lieu of including a translation or a link under clause (i), provide a link to the safety data sheets in Spanish via scannable technology or other electronic methods readily accessible on the product label.

**(B) Deadlines for bilingual labeling**

**(i) Pesticide products classified as restricted use**

In the case of pesticide products classified by the Administrator as restricted use under subsection (d)(1)(A), the deadline specified in this subparagraph is the date that is 3 years following December 29, 2022.

**(ii) Pesticide products not classified as restricted use**

In the case of pesticide products not classified by the Administrator as restricted use under subsection (d)(1)(A), the deadline specified in this subparagraph shall be as follows:

**(I) Agricultural**

**(aa) Acute Toxicity Category I**

For agricultural pesticides classified as Acute Toxicity Category I, the date that is 3 years after December 29, 2022.

**(bb) Acute Toxicity Category II**

For agricultural pesticides classified as Acute Toxicity Category II, the date that is 5 years after December 29, 2022.

**(II) Antimicrobial and non-agricultural**

**(aa) Acute Toxicity Category I**

For antimicrobial and non-agricultural pesticide products classified as Acute Toxicity Category I, the date that is 4 years after December 29, 2022.

**(bb) Acute Toxicity Category II**

For antimicrobial and non-agricultural pesticide products classified as Acute Toxicity Category II, the date that is 6 years after December 29, 2022.

**(III) Other pesticide products**

With respect to pesticide products not described in subclause (I) or (II), the date that is 8 years after December 29, 2022.

**(C) Implementation**

**(i) Non-notification**

**(I) In general**

In carrying out this paragraph, the Administrator shall allow translations of the parts of the label of a pesticide contained in the Spanish Translation Guide described in subparagraph (G) and scannable technology or other electronic methods to be added using non-notification procedures.

**(II) Non-notification procedure defined**

In this clause, the term ''non-notification procedure'' refers to a procedure under which a change may be made to a pesticide label without notifying the Administrator.

**(ii) Cooperation and consultation**

In carrying out this paragraph, the Administrator shall cooperate and consult with State lead agencies for pesticide regulation for the purpose of implementing bilingual labeling as provided in this paragraph as expeditiously as possible.

**(iii) End use labeling**

The labeling requirements of this paragraph shall apply to end use product labels.

**(iv) Incorporation timeframe**

After initial translation deadlines provided in subparagraph (B), updates to the Spanish Translation Guide described in subparagraph (G) shall be incorporated into labeling on the earlier of—

(I) in the case of agricultural use pesticide labels, as determined by the Administrator—

(aa) 1 year after the date of publication of the updated Spanish Label Translation Guide described in subparagraph (G); or

(bb) the released for shipment date specified on the EPA Stamped Approved Label after the pesticide label is next changed or amended following the date of publication of the updated Spanish Label Translation Guide described in subparagraph (G); and

(II) in the case of antimicrobial and non-agricultural use pesticide labels, as determined by the Administrator—

(aa) 2 years after the date of publication of the updated Spanish Label Translation Guide described in subparagraph (G); or

(bb) the released for shipment date specified on the EPA Stamped Approved Label after the pesticide label is next changed or amended following the date of publication of the updated Spanish Label Translation Guide described in subparagraph (G).

**(v) Notification of updates to the Spanish Translation Guide for Pesticide Labeling**

Not later than 10 days after updating the Spanish Translation Guide described in

subparagraph (G), the Administrator shall notify registrants of the update to such guide.

**(D) Accessibility of bilingual labeling for farm workers**

Not later than 180 days after December 29, 2022, to the maximum extent practicable, the Administrator shall seek stakeholder input on ways to make bilingual labeling required under this paragraph accessible to farm workers.

**(E) Plan**

Not later than 3 years after December 29, 2022, the Administrator shall implement a plan to ensure that farm workers have access to the bilingual labeling required under this paragraph.

**(F) Reporting**

Not later than 2 years after December 29, 2022, the Administrator shall develop and implement, and make publicly available, a plan for tracking the adoption of the bilingual labeling required under this paragraph.

**(G) Spanish Translation Guide described**

The Spanish Translation Guide described in this subparagraph is the Spanish Translation Guide for Pesticide Labeling issued in October 2019, as in effect on December 29, 2022, and any successor guides or amendments to such guide.

**(g) Registration review**

**(1) General rule**

**(A) Periodic review**

**(i) In general**

The registrations of pesticides are to be periodically reviewed.

**(ii) Regulations**

In accordance with this subparagraph, the Administrator shall by regulation establish a procedure for accomplishing the periodic review of registrations.

**(iii) Initial registration review**

The Administrator shall complete the registration review of each pesticide or pesticide case, which may be composed of 1 or more active ingredients and the products associated with the active ingredients, not later than the later of—

(I) October 1, 2022; or

(II) the date that is 15 years after the date on which the first pesticide containing a new active ingredient is registered.

**(iv) Subsequent registration review**

Not later than 15 years after the date on which the initial registration review is completed under clause (iii) and each 15 years thereafter, the Administrator shall complete a subsequent registration review for each pesticide or pesticide case.

**(v) Cancellation**

No registration shall be canceled as a result of the registration review process unless the Administrator follows the procedures and substantive requirements of section 136d of this title.

**(B) Docketing**

**(i) In general**

Subject to clause (ii), after meeting with 1 or more individuals that are not government employees to discuss matters relating to a registration review, the Administrator shall place in the docket minutes of the meeting, a list of attendees, and any documents exchanged at the meeting, not later than the earlier of—

(I) the date that is 45 days after the meeting; or

(II) the date of issuance of the registration review decision.

**(ii) Protected information**

The Administrator shall identify, but not include in the docket, any confidential business information the disclosure of which is prohibited by section 136h of this title.

**(C) Limitation**

Nothing in this subsection shall prohibit the Administrator from undertaking any other review of a pesticide pursuant to this subchapter.

**(2) Data**

**(A) Submission required**

The Administrator shall use the authority in subsection (c)(2)(B) to require the submission of data when such data are necessary for a registration review.

**(B) Data submission, compensation, and exemption**

For purposes of this subsection, the provisions of subsections (c)(1), (c)(2)(B), and (c)(2)(D) shall be utilized for and be applicable to any data required for registration review.

**(h) Registration requirements for antimicrobial pesticides**

**(1) Evaluation of process**

To the maximum extent practicable consistent with the degrees of risk presented by an antimicrobial pesticide and the type of review appropriate to evaluate the risks, the Administrator shall identify and evaluate reforms to the antimicrobial registration process that would reduce review periods existing as of August 3, 1996, for antimicrobial pesticide product registration applications and applications for amended registration of antimicrobial pesticide products, including—

(A) new antimicrobial active ingredients;

(B) new antimicrobial end-use products;

(C) substantially similar or identical antimicrobial pesticides; and

(D) amendments to antimicrobial pesticide registrations.

**(2) Review time period reduction goal**

Each reform identified under paragraph (1) shall be designed to achieve the goal of reducing the review period following submission of a complete application, consistent with the degree of risk, to a period of not more than—

(A) 540 days for a new antimicrobial active ingredient pesticide registration;

(B) 270 days for a new antimicrobial use of a registered active ingredient;

(C) 120 days for any other new antimicrobial product;

(D) 90 days for a substantially similar or identical antimicrobial product;

(E) 90 days for an amendment to an antimicrobial registration that does not require scientific review of data; and

(F) 120 days for an amendment to an antimicrobial registration that requires scientific review of data and that is not otherwise described in this paragraph.

**(3) Implementation**

**(A) Proposed rulemaking**

**(i) Issuance**

Not later than 270 days after August 3, 1996, the Administrator shall publish in the Federal Register proposed regulations to accelerate and improve the review of antimicrobial pesticide products designed to implement, to the extent practicable, the goals set forth in paragraph (2).

**(ii) Requirements**

Proposed regulations issued under clause (i) shall—

(I) define the various classes of antimicrobial use patterns, including household, industrial, and institutional disinfectants and sanitizing pesticides, preservatives, water treatment, and pulp and paper mill additives, and other such products intended to disinfect, sanitize, reduce, or mitigate growth or development of microbiological organisms, or protect inanimate objects, industrial processes or systems, surfaces, water, or other chemical substances from contamination, fouling, or deterioration caused by bacteria, viruses, fungi, protozoa, algae, or slime;

(II) differentiate the types of review undertaken for antimicrobial pesticides;

(III) conform the degree and type of review to the risks and benefits presented by antimicrobial pesticides and the function of review under this subchapter, considering the use patterns of the product, toxicity, expected exposure, and product type;

(IV) ensure that the registration process is sufficient to maintain antimicrobial pesticide efficacy and that antimicrobial pesticide products continue to meet product performance standards and effectiveness levels for each type of label claim made; and

(V) implement effective and reliable deadlines for process management.

**(iii) Comments**

In developing the proposed regulations, the Administrator shall solicit the views from registrants and other affected parties to maximize the effectiveness of the rule development process.

**(B) Final regulations**

**(i) Issuance**

The Administrator shall issue final regulations not later than 240 days after the close of the comment period for the proposed regulations.

**(ii) Failure to meet goal**

If a goal described in paragraph (2) is not met by the final regulations, the Administrator shall identify the goal, explain why the goal was not attained, describe the element of the regulations included instead, and identify future steps to attain the goal.

**(iii) Requirements**

In issuing final regulations, the Administrator shall—

(I) consider the establishment of a certification process for regulatory actions involving risks that can be responsibly managed, consistent with the degree of risk, in the most cost-efficient manner;

(II) consider the establishment of a certification process by approved laboratories as an adjunct to the review process;

(III) use all appropriate and cost-effective review mechanisms, including—

(aa) expanded use of notification and non-notification procedures;

(bb) revised procedures for application review; and

(cc) allocation of appropriate resources to ensure streamlined management of antimicrobial pesticide registrations; and

(IV) clarify criteria for determination of the completeness of an application.

**(C) Expedited review**

This subsection does not affect the requirements or extend the deadlines or review periods contained in subsection (c)(3).

**(D) Alternative review periods**

If the final regulations to carry out this paragraph are not effective 630 days after August 3, 1996, until the final regulations become effective, the review period, beginning on the date of receipt by the Agency of a complete application, shall be—

(i) 2 years for a new antimicrobial active ingredient pesticide registration;

(ii) 1 year for a new antimicrobial use of a registered active ingredient;

(iii) 180 days for any other new antimicrobial product;

(iv) 90 days for a substantially similar or identical antimicrobial product;

(v) 90 days for an amendment to an antimicrobial registration that does not require scientific review of data; and

(vi) 120 days for an amendment to an antimicrobial registration that requires scientific review of data and that is not otherwise described in this subparagraph.

**(E) Wood preservatives**

An application for the registration, or for an amendment to the registration, of a wood

preservative product for which a claim of pesticidal activity listed in section 136(mm) of this title is made (regardless of any other pesticidal claim that is made with respect to the product) shall be reviewed by the Administrator within the same period as that established under this paragraph for an antimicrobial pesticide product application, consistent with the degree of risk posed by the use of the wood preservative product, if the application requires the applicant to satisfy the same data requirements as are required to support an application for a wood preservative product that is an antimicrobial pesticide.

**(F) Notification**

**(i) In general**

Subject to clause (iii), the Administrator shall notify an applicant whether an application has been granted or denied not later than the final day of the appropriate review period under this paragraph, unless the applicant and the Administrator agree to a later date.

**(ii) Final decision**

If the Administrator fails to notify an applicant within the period of time required under clause (i), the failure shall be considered an agency action unlawfully withheld or unreasonably delayed for purposes of judicial review under chapter 7 of title 5.

**(iii) Exemption**

This subparagraph does not apply to an application for an antimicrobial pesticide that is filed under subsection (c)(3)(B) prior to 90 days after August 3, 1996.

**(iv) Limitation**

Notwithstanding clause (ii), the failure of the Administrator to notify an applicant for an amendment to a registration for an antimicrobial pesticide shall not be judicially reviewable in a Federal or State court if the amendment requires scientific review of data within—

(I) the time period specified in subparagraph (D)(vi), in the absence of a final regulation under subparagraph (B); or

(II) the time period specified in paragraph (2)(F), if adopted in a final regulation under subparagraph (B).

**(4) Annual report**

**(A) Submission**

Beginning on August 3, 1996, and ending on the date that the goals under paragraph (2) are achieved, the Administrator shall, not later than March 1 of each year, prepare and submit an annual report to the Committee on Agriculture of the House of Representatives and the Committee on Agriculture, Nutrition, and Forestry of the Senate.

**(B) Requirements**

A report submitted under subparagraph (A) shall include a description of—

(i) measures taken to reduce the backlog of pending registration applications;

(ii) progress toward achieving reforms under this subsection; and

(iii) recommendations to improve the activities of the Agency pertaining to antimicrobial registrations.

(June 25, 1947, ch. 125, §3, as added Pub. L. 92–516, §2, Oct. 21, 1972, 86 Stat. 979; amended Pub. L. 94–140, §12, Nov. 28, 1975, 89 Stat. 755; Pub. L. 95–396, §§2(a), 3–8, Sept. 30, 1978, 92 Stat. 820, 824–827; Pub. L. 100–532, title I, §§102(b), 103, title VI, §601(b)(1), title VIII, §801(b), Oct. 25, 1988, 102 Stat. 2667, 2677, 2680; Pub. L. 101–624, title XIV, §1492, Nov. 28, 1990, 104 Stat. 3628; Pub. L. 102–237, title X, §1006(a)(3), (b)(1), (2), (c), Dec. 13, 1991, 105 Stat. 1894–1896; Pub. L. 104–170, title I, §§105(b), 106(b), title II, §§210(b), (c)(1), (d), (e), (f)(2), 222–224, 231, 250, Aug. 3, 1996, 110 Stat. 1491, 1494–1497, 1499, 1503, 1504, 1508, 1510; Pub. L. 108–199, div. G, title V, §501(b), Jan. 23, 2004, 118 Stat. 419; Pub. L. 110–94, §§2, 3, Oct. 9, 2007, 121 Stat. 1000; Pub. L. 115–334, title X, §10115, Dec. 20, 2018, 132 Stat. 4914; Pub. L. 117–286, §4(a)(21), Dec. 27, 2022, 136 Stat. 4307; Pub. L. 117–328, div. HH, title VI, §702, Dec. 29, 2022, 136 Stat. 5996.)

### Editorial Notes

#### References in Text

The Endangered Species Act of 1973, referred to in subsec. (c)(11)(C)(i)(I), (II), (v), (vi), (G)(ii), is Pub. L. 93–205, Dec. 28, 1973, 87 Stat. 884, which is classified generally to chapter 35 (§1531 et seq.) of Title 16, Conservation. For complete classification of this Act to the Code, see Short Title note set out under section 1531 of Title 16 and Tables.

#### Prior Provisions

A prior section 3 of act June 25, 1947, was classified to section 135a of this title prior to amendment of act June 25, 1947, by Pub. L. 92–516.

#### Amendments

2022—Subsec. (c)(11)(F). Pub. L. 117–286 substituted ''Chapter 10 of title 5'' for ''Federal Advisory Committee Act'' in heading and ''Chapter 10 of title 5'' for ''The Federal Advisory Committee Act (5 U.S.C. App.)'' in text.

Subsec. (f)(5). Pub. L. 117–328 added par. (5).

2018—Subsec. (c)(11). Pub. L. 115–334 added par. (11).

2007—Subsec. (c)(3)(B)(ii)(I). Pub. L. 110–94, §2(1), substituted ''review the application in accordance with section 136w–8(f)(4)(B) of this title and,'' for ''within 45 days after receiving the application, notify the registrant whether or not the application is complete and,''.

Subsec. (c)(3)(B)(ii)(II). Pub. L. 110–94, §2(2), substituted ''not later than the applicable decision review time established pursuant to section 136w–8(f)(4)(B) of this title, or, if no review time is established, not later than'' for ''within''.

Subsec. (g)(1)(A). Pub. L. 110–94, §3(1), designated first sentence as cl. (i) and inserted heading, designated second sentence as cl. (ii), inserted heading, and substituted ''In accordance with this subparagraph, the Administrator'' for ''The Administrator'', added cls. (iii) and (iv), designated fourth sentence as cl. (v) and inserted heading, and struck out third sentence which read as follows: ''The goal of these regulations shall be a review of a pesticide's registration every 15 years.''

Subsec. (g)(1)(B), (C). Pub. L. 110–94, §3(2), (3), added subpar. (B) and redesignated former subpar. (B) as (C).

2004—Subsec. (h)(2)(F). Pub. L. 108–199, §501(b)(1), substituted ''120 days'' for ''90 to 180 days''.

Subsec. (h)(3)(D)(vi). Pub. L. 108–199, §501(b)(2)(A), substituted ''120 days'' for ''240 days''.

Case: 26-298, 08/21/2026, DktEntry: 31.2, (26 of 37)



Subsec. (h)(3)(F)(iv). Pub. L. 108–199, § 501(b)(2)(B), added cl. (iv).

1996—Subsec. (c)(1)(F)(ii) to (vi). Pub. L. 104–170, § 210(b), added cls. (ii), (v), and (vi), redesignated former cls. (ii) and (iii) as (iii) and (iv), respectively, and in cl. (iv) substituted "(i), (ii), and (iii)" for "(i) and (ii)".

Subsec. (c)(1)(G). Pub. L. 104–170, § 250(1), added subpar. (G).

Subsec. (c)(2)(A). Pub. L. 104–170, §§ 210(d)(1), 231, inserted heading, inserted "the public health and agricultural need for such minor use," after "pattern of use,", and substituted "potential beneficial or adverse effects on man and the environment" for "potential exposure of man and the environment to the pesticide".

Subsec. (c)(2)(B). Pub. L. 104–170, § 210(d)(2), inserted heading.

Subsec. (c)(2)(B)(vi). Pub. L. 104–170, § 210(c)(1), added cl. (vi).

Subsec. (c)(2)(B)(vii). Pub. L. 104–170, § 210(f)(2), added cl. (vii).

Subsec. (c)(2)(B)(viii). Pub. L. 104–170, § 222, added cl. (viii).

Subsec. (c)(2)(C). Pub. L. 104–170, § 210(d)(3), inserted heading.

Subsec. (c)(2)(E). Pub. L. 104–170, § 210(d)(4), added subpar. (E).

Subsec. (c)(3)(A), (B). Pub. L. 104–170, § 210(e)(1), (2), inserted headings.

Subsec. (c)(3)(C), (D). Pub. L. 104–170, § 210(e)(3), added subpars. (C) and (D).

Subsec. (c)(9). Pub. L. 104–170, § 223, added par. (9).

Subsec. (c)(10). Pub. L. 104–170, § 250(2), added par. (10).

Subsec. (f)(4). Pub. L. 104–170, § 105(b), added par. (4).

Subsec. (g). Pub. L. 104–170, § 106(b), added subsec. (g).

Subsec. (h). Pub. L. 104–170, § 224, added subsec. (h).

1991—Subsec. (c)(1)(D). Pub. L. 102–237, § 1006(a)(3)(B), (C), added subpar. (D) and redesignated former subpar. (D) as (F).

Subsec. (c)(1)(E). Pub. L. 102–237, § 1006(a)(3)(A), (C), added subpar. (E) and struck out former subpar. (E) which read as follows: "the complete formula of the pesticide; and".

Subsec. (c)(1)(F). Pub. L. 102–237, § 1006(a)(3)(A), (B), (D), redesignated former subpar. (D) as (F), in cl. (i) substituted "With" for "with" and a period for semicolon at end, in cl. (ii) substituted "Except" for "except" and a period for semicolon at end, in cl. (iii) substituted "After" for "after" and a period for semicolon at end, and struck out former subpar. (F) which read as follows: "a request that the pesticide be classified for general use, for restricted use, or for both."

Subsec. (c)(2)(A). Pub. L. 102–237, § 1006(b)(1), (2), substituted "the Administrator" for "he" before "requires", "shall permit", "shall make", and "deems", and substituted "the Administrator's" for "his".

Subsec. (c)(2)(D). Pub. L. 102–237, § 1006(c), clarified amendment made by Pub. L. 100–532, § 102(b)(2)(A). See 1988 Amendment note below.

Subsec. (c)(3)(A). Pub. L. 102–237, § 1006(b)(2), substituted "the Administrator's" for "his".

Subsec. (c)(5). Pub. L. 102–237, § 1006(b)(1), substituted "the Administrator" for "he" before "determines".

Subsec. (c)(6). Pub. L. 102–237, § 1006(b)(1), (2), substituted "the Administrator" for "he" before "shall notify" in two places and "the Administrator's" for "his" in four places.

Subsec. (d)(1). Pub. L. 102–237, § 1006(b)(1), substituted "the Administrator" for "he" before "shall classify it for both" in subpar. (A), before "will classify" in subpar. (B), and before "shall classify" in subpar. (C).

Subsec. (d)(2). Pub. L. 102–237, § 1006(b)(1), substituted "the Administrator" for "he" before "shall notify".

1990—Subsec. (c)(2)(A). Pub. L. 101–624 inserted after third sentence "The Administrator shall not require a person to submit, in relation to a registration or reregistration of a pesticide for minor agricultural use under this subchapter, any field residue data from a geographic area where the pesticide will not be registered for such use."

1988—Subsec. (a). Pub. L. 100–532, § 601(b)(1), substituted "Requirement of registration" for "Requirement" in heading and amended text generally. Prior to amendment, text read as follows: "Except as otherwise provided by this subchapter, no person in any State may distribute, sell, offer for sale, hold for sale, ship, deliver for shipment, or receive and (having so received) deliver or offer to deliver, to any person any pesticide which is not registered with the Administrator."

Subsec. (c)(1)(D). Pub. L. 100–532, § 801(b)(1)–(4), in introductory provisions, substituted "paragraph (2)(D)" for "subsection (c)(2)(D) of this section", in cl. (i), substituted "(i) with" for "(i) With" and ", except that" for ": *Provided*, That", in cl. (ii), substituted "clause (i)" for "subparagraph (D)(i) of this paragraph", and in cl. (iii), substituted "clauses (i) and (ii)" for "subparagraphs (D)(i) and (D)(ii) of this paragraph".

Subsec. (c)(2)(A). Pub. L. 100–532, § 801(b)(5)(A), (B), substituted "(2) Data in support of registration.—

"(A) The"

for "(2)(A) Data in support of registration.—The", and directed that subpar. (A) be aligned with left margin of subsec. (d)(1)(A) of this section.

Subsec. (c)(2)(B). Pub. L. 100–532, §§ 102(b)(1), 801(b)(5)(C)–(F), substituted "(B)(i) If" for "(B) Additional data to support existing registration.—(i) If", directed that cls. (ii) to (v) be aligned with left margin of subpar. (A), in cls. (ii) and (iii), inserted "The Administrator shall issue a notice of intent to suspend the registration of a pesticide in accordance with the procedures prescribed by clause (iv) if a registrant fails to comply with this clause.", in cl. (iv), substituted "title. The only" for "title: *Provided*, that the only", and in cl. (v), substituted "paragraph (1)(D)" for "subsection (c)(1)(D) of this section".

Subsec. (c)(2)(C). Pub. L. 100–532, § 801(b)(5)(G), (H), struck out "Simplified procedures" after "(C)" and directed that text be aligned with left margin of subpar. (A).

Subsec. (c)(2)(D). Pub. L. 100–532, § 102(b)(2)(A), and Pub. L. 102–237, § 1006(c), substituted "the pesticide that is the subject of the application" for "an end-use product".

Subsec. (c)(2)(D)(i). Pub. L. 100–532, § 102(b)(2)(B), struck out "the safety of" after "data pertaining to".

Subsec. (c)(3). Pub. L. 100–532, § 103, substituted "(A) The Administrator" for "The Administrator" and added subpar. (B).

Subsec. (c)(7). Pub. L. 100–532, § 801(b)(6), in introductory provisions, substituted "paragraph (5)" for "subsection (c)(5) of this section", in subpars. (A) and (B), substituted "paragraph (5). If" for "subsection (c)(5) of this section: *Provided*, That, if", and in subpar. (C), substituted "prescribe. A" for "prescribe: *Provided*, that a".

Subsec. (d)(1)(A). Pub. L. 100–532, § 801(b)(7), substituted "restricted use. If" for "restricted use, provided that if" and "restricted uses. The Administrator" for "restricted uses: *Provided*, *however*, That the Administrator".

Subsec. (f)(2). Pub. L. 100–532, § 801(b)(8), substituted "this subchapter. As" for "this subchapter: *Provided*, That as".

Subsec. (g). Pub. L. 100–532, § 801(b)(9), struck out subsec. (g) which read as follows: "The Administrator shall accomplish the reregistration of all pesticides in the most expeditious manner practicable: *Provided*, That, to the extent appropriate, any pesticide that results in a postharvest residue in or on food or feed crops shall be given priority in the reregistration process."

1978—Subsec. (c)(1)(D). Pub. L. 95–396, § 2(a)(1), added subpar. (D), and struck out provisions which required the applicant for registration of a pesticide to file with the Administrator a statement containing "if requested by the Administrator, a full description of the tests made and the results thereof upon which the claims are based, except that data submitted on or after January 1, 1970, in support of an application shall not, without permission of the applicant, be considered by the Administrator in support of any other application for registration unless such other applicant shall

have first offered to pay reasonable compensation for producing the test data to be relied upon and such data is not protected from disclosure by section 136h(b) of this title. This provision with regard to compensation for producing the test data to be relied upon shall apply with respect to all applications for registration or reregistration submitted on or after October 21, 1972. If the parties cannot agree on the amount and method of payment, the Administrator shall make such determination and may fix such other terms and conditions as may be reasonable under the circumstances. The Administrator's determination shall be made on the record after notice and opportunity for hearing. If either party does not agree with said determination, he may, within thirty days, take an appeal to the Federal district court for the district in which he resides with respect to either the amount of the payment or the terms of payment, or both. Registration shall not be delayed pending the determination of reasonable compensation between the applicants, by the Administrator or by the court.''.

Subsec. (c)(2). Pub. L. 95–396, §§2(a)(2)(A)–(D), 3, 4, designated existing provisions as subpar. (A), inserted in second sentence ''under subparagraph (B) of this paragraph'' after ''kind of information'', struck out from introductory text of third sentence ''subsection (c)(1)(D) of this section and'' after ''Except as provided by'', and inserted provisions relating to establishment of standards for data requirements for registration of pesticides with respect to minor uses and consideration of economic factors in development of standards and cost of development, and added subpars. (B) to (D).

Subsec. (c)(5). Pub. L. 95–396, §5, provided for waiver of data requirements pertaining to efficacy.

Subsec. (c)(7), (8). Pub. L. 95–396, §6, added pars. (7) and (8).

Subsec. (d)(1)(A). Pub. L. 95–396, §7(1), authorized classification of pesticide uses by regulation on the initial classification and registered pesticides prior to reregistration.

Subsec. (d)(2). Pub. L. 95–396, §7(2), substituted ''forty-five days'' for ''30 days''.

Subsec. (d)(3). Pub. L. 95–396, §7(3), added par. (3).

Subsec. (g). Pub. L. 95–396, §8, added subsec. (g).

1975—Subsec. (c)(1)(D). Pub. L. 94–140 inserted exception relating to test data submitted on or after January 1, 1970, in support of application, inserted provision that compensation for producing test data shall apply to all applications submitted on or after October 21, 1972, and provision relating to delay of registration pending determination of reasonable compensation, struck out requirement that payment determined by court not be less than amount determined by Administrator, and substituted ''If either party'' for ''If the owner of the test data''.

## Statutory Notes and Related Subsidiaries

### Effective Date of 2007 Amendment

Pub. L. 110–94, §6, Oct. 9, 2007, 121 Stat. 1007, provided that: ''This Act [see Short Title of 2007 Amendment note set out under section 136 of this title] and the amendments made by this Act take effect on October 1, 2007.''

### Effective Date of 2004 Amendment

Pub. L. 108–199, div. G, title V, §501(h), Jan. 23, 2004, 118 Stat. 434, provided that: ''Except as otherwise provided in this section [enacting section 136w–8 of this title, amending this section and sections 136a–1, 136x, and 136y of this title, and enacting provisions set out as notes under sections 136 of this title and section 346a of Title 21, Food and Drugs] and the amendments made by this section, this section and the amendments made by this section take effect on the date that is 60 days after the date of enactment of this Act [Jan. 23, 2004].''

### Effective Date of 1988 Amendment

Amendment by Pub. L. 100–532 effective on expiration of 60 days after Oct. 25, 1988, see section 901 of Pub. L. 100–532, set out as a note under section 136 of this title.

### Effective Date of 1978 Amendment

Pub. L. 95–396, §2(b), Sept. 30, 1978, 92 Stat. 824, provided that: ''The amendment to section 3(c)(1)(D) of the Federal Insecticide, Fungicide, and Rodenticide Act [subsec. (c)(1)(D) of this section] made by [subsec. (a)(1) of] this section shall apply with respect to all applications for registration approved after the date of enactment of this Act [Sept. 30, 1978].''

### Effective Date

For effective date of section, see section 4 of Pub. L. 92–516, set out as a note under section 136 of this title.

### Registration Review Deadline Extension

Pub. L. 117–328, div. HH, title VI, §711, Dec. 29, 2022, 136 Stat. 6083, provided that:

''(a) In General.—Notwithstanding section 3(g)(1)(A)(iii)(I) of the Federal Insecticide, Fungicide, and Rodenticide Act (7 U.S.C. 136a(g)(1)(A)(iii)(I)), the Administrator of the Environmental Protection Agency (referred to in this section as the 'Administrator') shall complete the initial registration review of each pesticide or pesticide case covered by that section not later than October 1, 2026.

''(b) Interim Registration Review Decision Requirements.—

''(1) Definition of covered interim registration review decision.—In this subsection, the term 'covered interim registration review decision' means an interim registration review decision—

''(A) that is associated with an initial registration review described in subsection (a);

''(B) that is noticed in the Federal Register during the period beginning on the date of enactment of this Act [Dec. 29, 2022] and ending on October 1, 2026; and

''(C) for which the Administrator has not, as of the date on which the decision is noticed in the Federal Register, made effects determinations or completed any necessary consultation under section 7(a)(2) of the Endangered Species Act of 1973 (16 U.S.C. 1536(a)(2)).

''(2) Requirements.—Any covered interim registration review decision shall include, where applicable, measures to reduce the effects of the applicable pesticide on—

''(A) species listed under the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.); or

''(B) any designated critical habitat.

''(3) Consultation.—In developing measures described in paragraph (2), the Administrator shall take into account the input received from the Secretary of Agriculture and other members of the interagency working group established under section 3(c)(11) of the Federal Insecticide, Fungicide, and Rodenticide Act (7 U.S.C. 136a(c)(11)).''

### Biological Pesticide Handling Study

Pub. L. 101–624, title XIV, §1498, Nov. 28, 1990, 104 Stat. 3631, provided that the National Academy of Sciences would conduct a study of the biological control programs and registration procedures utilized by the Food and Drug Administration, the Animal and Plant Health Inspection Service, and the Environmental Protection Agency, and within 1 year after completion of the study, develop and implement a common process for reviewing and approving biological control applications submitted to such agencies and offices based on the study conducted, the recommendation of the National Academy of Sciences, and other public comment.

### Education, Study, and Report

Pub. L. 100–478, title I, §1010, Oct. 7, 1988, 102 Stat. 2313, provided that:

''(a) Education.—The Administrator of the Environmental Protection Agency in cooperation with the Secretary of Agriculture and the Secretary of the Interior,

promptly upon enactment of this Act [Oct. 7, 1988], shall conduct a program to inform and educate fully persons engaged in agricultural food and fiber commodity production of any proposed pesticide labeling program or requirements that may be imposed by the Administrator in compliance with the Endangered Species Act [of 1973] (16 U.S.C. 1531 et seq.). The Administrator also shall provide the public with notice of, and opportunity for comment on, the elements of any such program and requirements based on compliance with the Endangered Species Act [of 1973], including (but not limited to) an identification of any pesticides affected by the program; an explanation of the restriction or prohibition on the user or applicator of any such pesticide; an identification of those geographic areas affected by any pesticide restriction or prohibition; an identification of the effects of any restricted or prohibited pesticide on endangered or threatened species; and an identification of the endangered or threatened species along with a general description of the geographic areas in which such species are located wherein the application of a pesticide will be restricted, prohibited, or its use otherwise limited, unless the Secretary of the Interior determines that the disclosure of such information may create a substantial risk of harm to such species or its habitat.

"(b) STUDY.—The Administrator of the Environmental Protection Agency, jointly with the Secretary of Agriculture and the Secretary of the Interior, shall conduct a study to identify reasonable and prudent means available to the Administrator to implement the endangered species pesticides labeling program which would comply with the Endangered Species Act of 1973, as amended, and which would allow persons to continue production of agricultural food and fiber commodities. Such study shall include investigation by the Administrator of the best available methods to develop maps and the best available alternatives to mapping as means of identifying those circumstances in which use of pesticides may be restricted; identification of alternatives to prohibitions on pesticide use, including, but not limited to, alternative pesticides and application methods and other agricultural practices which can be used in lieu of any pesticides whose use may be restricted by the labeling program; examination of methods to improve coordination among the Environmental Protection Agency, Department of Agriculture, and Department of the Interior in administration of the labeling program; and analysis of the means of implementing the endangered species pesticides labeling program or alternatives to such a program, if any, to promote the conservation of endangered or threatened species and to minimize the impacts to persons engaged in agricultural food and fiber commodity production and other affected pesticide users and applicators.

"(c) REPORT.—The Administrator of the Environmental Protection Agency in cooperation with the Secretary of Agriculture and the Secretary of the Interior shall submit a report within one year of the date of enactment of this Act [Oct. 7, 1988], presenting the results of the study conducted pursuant to subsection (b) of this section to the Committee on Merchant Marine and Fisheries and the Committee on Agriculture of the United States House of Representatives, and the Committee on Environment and Public Works and the Committee on Agriculture, Nutrition, and Forestry of the United States Senate."

## § 136a–1. Reregistration of registered pesticides

### (a) General rule

The Administrator shall reregister, in accordance with this section, each registered pesticide containing any active ingredient contained in any pesticide first registered before November 1, 1984, except for any pesticide as to which the Administrator has determined, after November 1, 1984, and before the effective date of this section, that—

(1) there are no outstanding data requirements; and

(2) the requirements of section 136a(c)(5) of this title have been satisfied.

### (b) Reregistration phases

Reregistrations of pesticides under this section shall be carried out in the following phases:

(1) The first phase shall include the listing under subsection (c) of the active ingredients of the pesticides that will be reregistered.

(2) The second phase shall include the submission to the Administrator under subsection (d) of notices by registrants respecting their intention to seek reregistration, identification by registrants of missing and inadequate data for such pesticides, and commitments by registrants to replace such missing or inadequate data within the applicable time period.

(3) The third phase shall include submission to the Administrator by registrants of the information required under subsection (e).

(4) The fourth phase shall include an independent, initial review by the Administrator under subsection (f) of submissions under phases two and three, identification of outstanding data requirements, and the issuance, as necessary, of requests for additional data.

(5) The fifth phase shall include the review by the Administrator under subsection (g) of data submitted for reregistration and appropriate regulatory action by the Administrator.

### (c) Phase one

#### (1) Priority for reregistration

For purposes of the reregistration of the pesticides described in subsection (a), the Administrator shall list the active ingredients of pesticides and shall give priority to, among others, active ingredients (other than active ingredients for which registration standards have been issued before the effective date of this section) that—

(A) are in use on or in food or feed and may result in postharvest residues;

(B) may result in residues of potential toxicological concern in potable ground water, edible fish, or shellfish;

(C) have been determined by the Administrator before the effective date of this section to have significant outstanding data requirements; or

(D) are used on crops, including in greenhouses and nurseries, where worker exposure is most likely to occur.

#### (2) Reregistration lists

For purposes of reregistration under this section, the Administrator shall by order—

(A) not later than 70 days after the effective date of this section, list pesticide active ingredients for which registration standards have been issued before such effective date;

(B) not later than 4 months after such effective date, list the first 150 pesticide active ingredients, as determined under paragraph (1);

(C) not later than 7 months after such effective date, list the second 150 pesticide active ingredients, as determined under paragraph (1); and

(D) not later than 10 months after such effective date, list the remainder of the pes-

AUTHENTICATED U.S. GOVERNMENT INFORMATION GPO





the pesticide is not subject to reimbursement by the seller.

(B) If—

(i) the Administrator notifies a registrant under section 136d(c)(1) of this title that the Administrator intends to suspend a registration or that an emergency order of suspension of a registration under section 136d(c)(3) of this title has been issued;

(ii) the registration in question is suspended under section 136d(c) of this title, and thereafter is canceled under section 136d(b), 136d(d), or 136d(f) of this title;

(iii) any person who, immediately before the notice to the registrant under clause (i)—

(I) had not been notified in writing by the seller, as provided under subparagraph (A), that any quantity of the pesticide owned by such person is not subject to reimbursement by the seller in the event of suspension or cancellation of the pesticide; and

(II) owned any quantity of the pesticide for purposes of—

(aa) distributing or selling it; or

(bb) further processing it for distribution or sale directly to an end user;

suffered a loss by reason of the suspension or cancellation of the pesticide; and

(iv) the Administrator determines on the basis of a claim of loss submitted to the Administrator by the person, that the seller—

(I) did not provide the notice specified in subparagraph (A) to such person; and

(II) is and will continue to be unable to provide reimbursement to such person, as provided under subparagraph (A), for the loss referred to in clause (iii), as a result of the insolvency or bankruptcy of the seller and the seller's resulting inability to provide such reimbursement;

the person shall be entitled to an indemnity payment under this subsection for such quantity of the pesticide.

(C) If an indemnity payment is made by the United States under this paragraph, the United States shall be subrogated to any right that would otherwise be held under this paragraph by a seller who is unable to make a reimbursement in accordance with this paragraph with regard to reimbursements that otherwise would have been made by the seller.

**(3) Source**

Any payment required to be made under paragraph (1) or (2) shall be made from the appropriation provided under section 1304 of title 31.

**(4) Administrative settlement**

An administrative settlement of a claim for such indemnity may be made in accordance with the third paragraph of section 2414 of title 28 and shall be regarded as if it were made under that section for purposes of section 1304 of title 31.

**(c) Amount of payment**

**(1) In general**

The amount of an indemnity payment under subsection (a) or (b) to any person shall be determined on the basis of the cost of the pesticide owned by the person (other than the cost of transportation, if any) immediately before the issuance of the notice to the registrant referred to in subsection (a)(1)(A), (b)(1)(A), or (b)(2)(B)(i), except that in no event shall an indemnity payment to any person exceed the fair market value of the pesticide owned by the person immediately before the issuance of the notice.

**(2) Special rule**

Notwithstanding any other provision of this subchapter, the Administrator may provide a reasonable time for use or other disposal of the pesticide. In determining the quantity of any pesticide for which indemnity shall be paid under this section, proper adjustment shall be made for any pesticide used or otherwise disposed of by the owner.

(June 25, 1947, ch. 125, §15, as added Pub. L. 92–516, §2, Oct. 21, 1972, 86 Stat. 993; amended Pub. L. 100–532, title V, §501(a), Oct. 25, 1988, 102 Stat. 2674.)

**Editorial Notes**

AMENDMENTS

1988—Pub. L. 100–532 amended section generally, in subsec. (a), substituting provisions relating to general indemnification for provisions relating to requirements for payment, adding subsec. (b), and redesignating provisions of former subsec. (b), with further amendment, as subsec. (c).

**Statutory Notes and Related Subsidiaries**

EFFECTIVE DATE OF 1988 AMENDMENT

Pub. L. 100–532, title V, §501(a), Oct. 25, 1988, 102 Stat. 2674, provided that amendment made by Pub. L. 100–532 is effective 180 days after Oct. 25, 1988.

EFFECTIVE DATE

For effective date of section, see section 4 of Pub. L. 92–516, set out as a note under section 136 of this title.

INTERIM PAYMENTS

Pub. L. 100–532, title V, §501(b), Oct. 25, 1988, 102 Stat. 2676, provided that:

"(1) SOURCE.—Any obligation of the Administrator to pay an indemnity arising under section 15 [this section], as it existed prior to the effective date of the amendment made by this section [see Effective Date of 1988 Amendment note above], shall be made from the appropriation provided under section 1304 of title 31, United States Code.

"(2) ADMINISTRATIVE SETTLEMENT.—An administrative settlement of a claim for such indemnity may be made in accordance with the third paragraph of section 2414 of title 28, United States Code, and shall be regarded as if it were made under that section for purposes of section 1304 of title 31, United States Code."

## § 136n. Administrative procedure; judicial review

**(a) District court review**

Except as otherwise provided in this subchapter, the refusal of the Administrator to cancel or suspend a registration or to change a classification not following a hearing and other final actions of the Administrator not committed to the discretion of the Administrator by law are judicially reviewable by the district courts of the United States.

**(b) Review by court of appeals**

In the case of actual controversy as to the validity of any order issued by the Administrator following a public hearing, any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in the United States court of appeals for the circuit wherein such person resides or has a place of business, within 60 days after the entry of such order, a petition praying that the order be set aside in whole or in part. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Administrator or any officer designated by the Administrator for that purpose, and thereupon the Administrator shall file in the court the record of the proceedings on which the Administrator based the Administrator's order, as provided in section 2112 of title 28. Upon the filing of such petition the court shall have exclusive jurisdiction to affirm or set aside the order complained of in whole or in part. The court shall consider all evidence of record. The order of the Administrator shall be sustained if it is supported by substantial evidence when considered on the record as a whole. The judgment of the court affirming or setting aside, in whole or in part, any order under this section shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of title 28. The commencement of proceedings under this section shall not, unless specifically ordered by the court to the contrary, operate as a stay of an order.

**(c) Jurisdiction of district courts**

The district courts of the United States are vested with jurisdiction specifically to enforce, and to prevent and restrain violations of, this subchapter.

**(d) Notice of judgments**

The Administrator shall, by publication in such manner as the Administrator may prescribe, give notice of all judgments entered in actions instituted under the authority of this subchapter.

(June 25, 1947, ch. 125, §16, as added Pub. L. 92–516, §2, Oct. 21, 1972, 86 Stat. 994; amended Pub. L. 98–620, title IV, §402(4)(C), Nov. 8, 1984, 98 Stat. 3357; Pub. L. 100–532, title VIII, §801(i), Oct. 25, 1988, 102 Stat. 2682; Pub. L. 102–237, title X, §1006(b)(1), (2), (3)(P), Dec. 13, 1991, 105 Stat. 1895, 1896.)

**Editorial Notes**

AMENDMENTS

1991—Subsec. (b). Pub. L. 102–237, §1006(b)(1), (2), (3)(P), substituted "the Administrator" for "he" before "based", "the Administrator's" for "his", and "the Administrator" for "him" after "designated by".

Subsec. (d). Pub. L. 102–237, §1006(b)(1), substituted "the Administrator" for "he" before "may".

1988—Subsec. (a). Pub. L. 100–532 amended subsec. (a) generally. Prior to amendment, subsec. (a) read as follows: "Except as is otherwise provided in this subchapter, Agency refusals to cancel or suspend registrations or change classifications not following a hearing and other final Agency actions not committed to Agency discretion by law are judicially reviewable in the district courts."

1984—Subsec. (b). Pub. L. 98–620 struck out provisions requiring the court to advance on the docket and expedite the disposition of all cases filed pursuant to this section.

**Statutory Notes and Related Subsidiaries**

EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by Pub. L. 100–532 effective on expiration of 60 days after Oct. 25, 1988, see section 901 of Pub. L. 100–532, set out as a note under section 136 of this title.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–620 not applicable to cases pending on Nov. 8, 1984, see section 403 of Pub. L. 98–620, set out as an Effective Date note under section 1657 of Title 28, Judiciary and Judicial Procedure.

EFFECTIVE DATE

For effective date of section, see section 4 of Pub. L. 92–516, set out as a note under section 136 of this title.

**§ 136*o*. Imports and exports**

**(a) Pesticides and devices intended for export**

Notwithstanding any other provision of this subchapter, no pesticide or device or active ingredient used in producing a pesticide intended solely for export to any foreign country shall be deemed in violation of this subchapter—

(1) when prepared or packed according to the specifications or directions of the foreign purchaser, except that producers of such pesticides and devices and active ingredients used in producing pesticides shall be subject to sections 136(p), 136(q)(1)(A), (C), (D), (E), (G), and (H), 136(q)(2)(A), (B), (C)(i) and (iii), and (D), 136e, and 136f of this title; and

(2) in the case of any pesticide other than a pesticide registered under section 136a or sold under section 136d(a)(1) of this title, if, prior to export, the foreign purchaser has signed a statement acknowledging that the purchaser understands that such pesticide is not registered for use in the United States and cannot be sold in the United States under this subchapter.

A copy of that statement shall be transmitted to an appropriate official of the government of the importing country.

**(b) Cancellation notices furnished to foreign governments**

Whenever a registration, or a cancellation or suspension of the registration of a pesticide becomes effective, or ceases to be effective, the Administrator shall transmit through the State Department notification thereof to the governments of other countries and to appropriate international agencies. Such notification shall, upon request, include all information related to the cancellation or suspension of the registration of the pesticide and information concerning other pesticides that are registered under section 136a of this title and that could be used in lieu of such pesticide.

**(c) Importation of pesticides and devices**

**(1) In general**

The Secretary of the Treasury shall notify the Administrator of the arrival of pesticides and devices and shall deliver to the Administrator, upon the Administrator's request, sam-

AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO





(5) *Requirements pertaining to pesticide devices*. Refer to subpart Z of this part.

[73 FR 75594, Dec. 12, 2008]

**§ 152.3 Definitions.**

Terms used in this part have the same meaning as in the Act. In addition, the following terms have the meanings set forth in this section.

*Act* or *FIFRA* means the Federal Insecticide, Fungicide, and Rodenticide Act, as amended (7 U.S.C. 136–136y).

*Active ingredient* means any substance (or group of structurally similar substances if specified by the Agency) that will prevent, destroy, repel or mitigate any pest, or that functions as a plant regulator, desiccant, or defoliant within the meaning of FIFRA sec. 2(a), except as provided in §174.3 of this chapter.

*Acute dermal* $LD_{50}$ means a statistically derived estimate of the single dermal dose of a substance that would cause 50 percent mortality to the test population under specified conditions.

*Acute inhalation* $LC_{50}$ means a statistically derived estimate of the concentration of a substance that would cause 50 percent mortality to the test population under specified conditions.

*Acute oral* $LD_{50}$ means a statistically derived estimate of the single oral dose of a substance that would cause 50 percent mortality to the test population under specified conditions.

*Administrator* means the Administrator of the United States Environmental Protection Agency or his delegate.

*Agency* means the United States Environmental Protection Agency (EPA), unless otherwise specified.

*Applicant* means a person who applies for a registration or amended registration under FIFRA sec. 3.

*Biological control agent* means any living organism applied to or introduced into the environment that is intended to function as a pesticide against another organism declared to be a pest by the Administrator.

*Distribute or sell* and other grammatical variations of the term such as ''distributed or sold'' and ''distribution or sale,'' means the acts of distributing, selling, offering for sale, holding for sale, shipping, holding for shipment, delivering for shipment, or receiving and (having so received) delivering or offering to deliver, or releasing for shipment to any person in any State.

*End use product* means a pesticide product whose labeling

(1) Includes directions for use of the product (as distributed or sold, or after combination by the user with other substances) for controlling pests or defoliating, desiccating, or regulating the growth of plants, and

(2) Does not state that the product may be used to manufacture or formulate other pesticide products.

*Final printed labeling* means the label or labeling of the product when distributed or sold. Final printed labeling does not include the package of the product, unless the labeling is an integral part of the package.

*Inert ingredient* means any substance (or group of structurally similar substances if designated by the Agency), other than an active ingredient, which is intentionally included in a pesticide product, except as provided by §174.3 of this chapter.

*Institutional use* means any application of a pesticide in or around any property or facility that functions to provide a service to the general public or to public or private organizations, including but not limited to:

(1) Hospitals and nursing homes.

(2) Schools other than preschools and day care facilities.

(3) Museums and libraries.

(4) Sports facilities.

(5) Office buildings.

*Living plant* means a plant, plant organ, or plant part that is alive, viable, or dormant. Examples of plant parts include, but are not limited to, seeds, fruits, leaves, roots, stems, flowers, and pollen.

*Manufacturing use product* means any pesticide product that is not an end-use product.

*New use*, when used with respect to a product containing a particular active ingredient, means:

(1) Any proposed use pattern that would require the establishment of, the increase in, or the exemption from the requirement of a tolerance or food additive regulation under section 408 of the Federal Food, Drug and Cosmetic Act;

(2) Any aquatic, terrestrial, outdoor, or forestry use pattern, if no product containing the active ingredient is currently registered for that use pattern; or

(3) Any additional use pattern that would result in a significant increase in the level of exposure, or a change in the route of exposure, to the active ingredient of man or other organisms.

*Operated by the same producer*, when used with respect to two establishments, means that each such establishment is either owned by, or leased for operation by and under the control of, the same person. The term does not include establishments owned or operated by different persons, regardless of contractural agreement between such persons.

*Package* or *packaging* means the immediate container or wrapping, including any attached closure(s), in which the pesticide is contained for distribution, sale, consumption, use, or storage. The term does not include any shipping or bulk container used for transporting or delivering the pesticide unless it is the only such package.

*Pesticide* means any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest, or intended for use as a plant regulator, defoliant, or desiccant, other than any article that:

(1) Is a new animal drug under FFDCA sec. 201(w), or

(2) Is an animal drug that has been determined by regulation of the Secretary of Health and Human Services not to be a new animal drug, or

(3) Is an animal feed under FFDCA sec. 201(x) that bears or contains any substances described by paragraph (s) (1) or (2) of this section.

*Pesticide product* means a pesticide in the particular form (including composition, packaging, and labeling) in which the pesticide is, or is intended to be, distributed or sold. The term includes any physical apparatus used to deliver or apply the pesticide if distributed or sold with the pesticide.

*Plant-incorporated protectant* means a pesticidal substance that is intended to be produced and used in a living plant, or in the produce thereof, and the genetic material necessary for production of such a pesticidal substance. It also includes any inert ingredient contained in the plant, or produce thereof.

*Released for shipment*. A product becomes released for shipment when the producer has packaged and labeled it in the manner in which it will be distributed or sold, or has stored it in an area where finished products are ordinarily held for shipment. Products stored in an area where finished products are ordinarily held for shipment, but which are not intended to be released for shipment must be physically separated and marked as not yet released for shipment. Once a product becomes released for shipment, the product remains in the condition of being released for shipment unless subsequent activities, such as relabeling or repackaging, constitute production.

*Residential use* means use of a pesticide directly:

(1) On humans or pets,

(2) In, on, or around any structure, vehicle, article, surface, or area associated with the household, including but not limited to areas such as non-agricultural outbuildings, non-commercial greenhouses, pleasure boats and recreational vehicles, or

(3) In any preschool or day care facility.

[53 FR 15975, May 4, 1988, as amended at 66 FR 37814, July 19, 2001; 73 FR 64224, Oct. 29, 2008; 73 FR 75594, Dec. 12, 2008]

### § 152.5 Pests.

An organism is declared to be a pest under circumstances that make it deleterious to man or the environment, if it is:

(a) Any vertebrate animal other than man;

(b) Any invertebrate animal, including but not limited to, any insect, other arthropod, nematode, or mollusk such as a slug and snail, but excluding any internal parasite of living man or other living animals;

(c) Any plant growing where not wanted, including any moss, alga, liverwort, or other plant of any higher order, and any plant part such as a root; or

(d) Any fungus, bacterium, virus, prion, or other microorganism, except for those on or in living man or other living animals and those on or in processed food or processed animal feed,

AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO





## Subpart A—General Provisions

**§ 158.1 Purpose and scope.**

(a) *Purpose.* The purpose of this part is to specify the kinds of data and information EPA requires in order to make regulatory judgments under FIFRA secs. 3, 4, and 5 about the risks and benefits of pesticide products. Further, this part specifies the data and information needed to determine the safety of pesticide chemical residues under FFDCA sec. 408.

(b) *Scope.* (1) This part describes the minimum data and information EPA typically requires to support an application for pesticide registration or amendment; support the reregistration of a pesticide product; support the maintenance of a pesticide registration by means of the data call-in process, e.g., as used in the registration review program; or establish or maintain a tolerance or exemption from the requirements of a tolerance for a pesticide chemical residue.

(2) This part establishes general policies and procedures associated with the submission of data in support of a pesticide regulatory action.

(3) This part does not include study protocols, methodology, or standards for conducting or reporting test results; nor does this part describe how the Agency uses or evaluates the data and information in its risk assessment and risk management decisions, or the regulatory determinations that may be based upon the data.

(c) *Scope of individual subparts.* (1) *Conventional pesticides.* Subparts A, B, C, D, E, F, G, K, L, N, O, and R apply to conventional pesticides.

(2) *Biochemical pesticides.* Subparts A, B, E, R, and U apply to biochemical pesticides.

(3) *Microbial pesticides.* Subparts A, B, E, R, and V apply to microbial pesticides.

(4) *Antimicrobial pesticides.* Subparts A, B, C, D, E, R, and W of this part apply to antimicrobial pesticides.

[72 FR 60957, Oct. 26, 2007, as amended at 78 FR 26978, May 8, 2013; 87 FR 22474, Apr. 15, 2022]

**§ 158.3 Definitions.**

All terms defined in sec. 2 of the Federal Insecticide, Fungicide, and Rodenticide Act apply to this part and are used with the meaning given in the Act. Applicable terms from the Federal Food, Drug, and Cosmetic Act also apply to this part. Individual subparts may contain definitions that pertain solely to that subpart. The following additional terms apply to this part:

*Applicant* means any person or entity, including for the purposes of this part a registrant, who submits, or is required to submit, to the Agency any application, petition, or submission intended to persuade EPA to grant, modify, or leave unmodified a registration or other approval required as a condition of sale or distribution of a pesticide. Such submissions may include, but are not limited to, the following:

(1) An application for registration or amended registration of a pesticide product under FIFRA sec. 3 or 24.

(2) A submission of data required in conjunction with reregistration of a currently registered product under FIFRA sec. 4.

(3) An application for an experimental use permit under FIFRA sec. 5.

(4) A submission of data in response to a notice issued by EPA under FIFRA sec. 3(c)(2)(B).

(5) A petition to establish or modify a tolerance or an exemption from the requirement of a tolerance for a pesticide chemical residue under FFDCA sec. 408.

*Registration* includes a new registration, amended registration and reregistration, unless stated otherwise.

**§ 158.5 Applicability.**

(a) The requirements of this part apply to the following submissions:

(1) An application for new or amended registration under FIFRA sec. 3 or 24.

(2) An application for experimental use permit under FIFRA sec. 5.

(3) A submission of data or information to support the continuation of a registration under FIFRA sec. 3, 4, or 24.

(4) A petition to establish, modify or revoke a tolerance or exemption from a tolerance under FFDCA sec. 408.

(b) The information specified in this part must be furnished with each submission described in paragraph (a) of

(b) Certain toxicological and exposure studies must be submitted simultaneously with the toxicology data submitted in a tiered system. Exposure data must be submitted along with first tier toxicology data. The requirement for additional second and third level toxicology testing will be determined by the Agency based on the results of the first tiered studies.

(1) The required first-tier toxicology studies consist of:

(i) Battery of acute studies.

(ii) A subchronic 90–day dermal study or a subchronic 90–day inhalation study.

(iii) An acute and subchronic neurotoxicity screening battery in the rat.

(iv) Prenatal developmental toxicity studies in both the rat and rabbit.

(v) Reproduction and fertility studies in rats.

(vi) Battery of mutagenicity studies.

(vii) Immunotoxicity study.

(2) The conditionally required second-tier studies include:

(i) Subchronic 90–day feeding studies in both the rodent and nonrodent.

(ii) Dermal penetration study.

(3) The conditionally required third-tier studies include:

(i) Chronic feeding studies in the rodent.

(ii) Carcinogenicity.

(iii) Metabolism study.

(iv) Additional mutagenicity testing.

## Subpart G— Ecological Effects

### § 158.630 Terrestrial and aquatic nontarget organisms data requirements table.

(a) *General*. Sections 158.100 through 158.130 describe how to use this table to determine the terrestrial and aquatic nontarget data requirements for a particular pesticide product. Notes that apply to an individual test including specific conditions, qualifications, or exceptions to the designated test are listed in paragraph (e) of this section.

(b) *Use patterns*. (1) The terrestrial use pattern includes products classified under the general use patterns of terrestrial food crop, terrestrial feed crop, and terrestrial nonfood crop. The aquatic use pattern includes products classified under the general use patterns of aquatic food crop and aquatic nonfood use patterns. The greenhouse use pattern includes products classified under the general use patterns of greenhouse food crop and greenhouse nonfood crop. The indoor use pattern includes products classified under the general use patterns of indoor food and indoor nonfood use.

(2) Data are also required for the general use patterns of forestry and residential outdoor use.

(3) In general, for all outdoor end-uses, including turf, the following studies are required: Two avian oral $LD_{50}$, two avian dietary $LC_{50}$, two avian reproduction studies, two freshwater fish $LC_{50}$, one freshwater invertebrate $EC_{50}$, one honeybee acute contact $LD_{50}$, one freshwater fish early-life stage, one freshwater invertebrate life cycle, and three estuarine acute $LC_{50}/EC_{50}$ studies — fish, mollusk and invertebrate. All other outdoor residential uses, *i.e.*, gardens and ornamental will not usually require the freshwater fish early-life stage, the freshwater invertebrate life-cycle, and the acute estuarine tests.

(c) *Key*. R = Required; CR = Conditionally required; NR = Not required; TGAI = Technical grade of the active ingredient; TEP = Typical end-use product; PAI = Pure active ingredient; EP = end-use product. Commas between the test substances (*i.e.*, TGAI, TEP) indicate that data may be required on the TGAI or the TEP depending on the conditions set forth in the test note.

(d) *Table*. The following table shows the data requirements for nontarget terrestrial and aquatic organism. The table notes are shown in paragraph (e) of this section.

TERRESTRIAL AND AQUATIC NONTARGET ORGANISM DATA REQUIREMENTS

| Guideline Number | Data Requirement | Use Pattern | | | | | | Test substance | Test Note No. |
|---|---|---|---|---|---|---|---|---|---|
| | | Terrestrial | Aquatic | Forestry | Residential Outdoor | Greenhouse | Indoor | | |
| Avian and Mammalian Testing | | | | | | | | | |
| 850.2100 | Avian oral toxicity | R | R | R | R | CR | CR | TGAI | 1, 2, 3 |
| 850.2200 | Avian dietary toxicity | R | R | R | R | NR | NR | TGAI | 1, 4 |
| 850.2400 | Wild mammal toxicity | CR | CR | CR | CR | NR | NR | TGAI | 5 |
| 850.2300 | Avian reproduction | R | R | R | R | NR | NR | TGAI | 1, 4 |
| 850.2500 | Simulated or actual field testing | CR | CR | CR | CR | NR | NR | TEP | 6, 7 |
| Aquatic Organisms Testing | | | | | | | | | |
| 850.1075 | Freshwater fish toxicity | R | R | R | R | CR | CR | TGAI, TEP | 1, 2, 8, 9, 26 |
| 850.1010 | Acute toxicity freshwater invertebrates | R | R | R | R | CR | CR | TGAI, TEP | 1, 2, 9, 10, 26 |
| 850.1025<br>850.1035<br>850.1045<br>850.1055<br>850.1075 | Acute toxicity estuarine and marine organisms | R | R | R | R | NR | NR | TGAI, TEP | 1, 9, 11, 12, 26 |
| 850.1300 | Aquatic invertebrate life cycle (freshwater) | R | R | R | R | NR | NR | TGAI | 1, 10, 12 |
| 850.1350 | Aquatic invertebrate life cycle (saltwater) | CR | CR | CR | CR | NR | NR | TGAI | 12, 14, 15 |
| 850.1400 | Fish early-life stage (freshwater) | R | R | R | R | NR | NR | TGAI | 1, 12, 13 |
| 850.1400 | Fish early-life stage (saltwater) | CR | CR | CR | CR | NR | NR | TGAI | 12, 15, 16 |
| 850.1500 | Fish life cycle | CR | CR | CR | CR | NR | NR | TGAI | 17, 18 |
| 850.1710<br>850.1730<br>850.1850 | Aquatic organisms bioavailability, biomagnification, toxicity | CR | CR | CR | CR | NR | NR | TGAI, PAI, degradate | 19 |
| 850.1950 | Simulated or actual field testing for aquatic organisms | CR | CR | CR | CR | NR | NR | TEP | 7, 20 |
| Sediment Testing | | | | | | | | | |
| 850.1735 | Whole sediment: acute freshwater invertebrates | CR | CR | CR | CR | NR | NR | TGAI | 21 |

TERRESTRIAL AND AQUATIC NONTARGET ORGANISM DATA REQUIREMENTS—Continued

| Guideline Number | Data Requirement | Use Pattern | | | | | | Test substance | Test Note No. |
|---|---|---|---|---|---|---|---|---|---|
| | | Terrestrial | Aquatic | Forestry | Residential Outdoor | Greenhouse | Indoor | | |
| 850.1740 | Whole sediment: acute marine invertebrates | CR | CR | CR | CR | NR | NR | TGAI | 21, 23 |
| | Whole sediment: chronic invertebrates freshwater and marine | CR | CR | CR | CR | NR | NR | TGAI | 22, 23 |
| Insect Pollinator Testing | | | | | | | | | |
| 850.3020 | Honeybee acute contact toxicity | R | CR | R | R | NR | NR | TGAI | 1 |
| 850.3030 | Honey bee toxicity of residues on foliage | CR | CR | CR | CR | NR | NR | TEP | 24 |
| 850.3040 | Field testing for pollinators | CR | CR | CR | CR | NR | NR | TEP | 25 |

(e) *Test notes.* The following test notes apply to terrestrial and aquatic nontarget organisms data requirements in the table to paragraph (d) of this section:

1. Data using the TGAI are required to support all outdoor end-use product uses including, but not limited to turf. Data are generally not required to support end-use products in the form of a gas, a highly volatile liquid, a highly reactive solid, or a highly corrosive material.

2. For greenhouse and indoor end-use products, data using the TGAI are required to support manufacturing-use products to be reformulated into these same end-use products or to support end-use products when there is no registered manufacturing-use product. Avian acute oral data are not required for liquid formulations for greenhouse and indoor uses. The study is not required if there is no potential for environmental exposure.

3. Data are required on one passerine species and either one waterfowl species or one upland game bird species for terrestrial, aquatic, forestry, and residential outdoor uses. Data are preferred on waterfowl or upland game bird species for indoor and greenhouse uses.

4. Data are required on waterfowl and upland game bird species.

5. Tests are required based on the results of lower tier toxicology studies, such as the acute and subacute testing, intended use pattern, and environmental fate characteristics that indicate potential exposure.

6. Higher tier testing may be required for a specific use pattern when a refined risk assessment indicates a concern based on laboratory toxicity endpoints and refined exposure assessments.

7. Environmental chemistry methods used to generate data associated with this study must include results of a successful confirmatory method trial by an independent laboratory. Test standards and procedures for independent laboratory validation are available as addenda to the guideline for this test requirement.

8. Data are required on one coldwater fish and one warmwater fish for terrestrial, aquatic, forestry, and residential outdoor uses. For indoor and greenhouse uses, testing with only one of either fish species is required.

9. EP or TEP testing is required for any product which meets any of the following conditions:

i. The end-use pesticide will be introduced directly into an aquatic environment (e.g., aquatic herbicides and mosquito larvicides) when used as directed.

ii. The maximum expected environmental concentration (MEEC) or the estimated environmental concentration (EEC) in the aquatic environment is ≥one-half the $LC_{50}$ or $EC_{50}$ of the TGAI when the EP is used as directed.

iii. An ingredient in the end-use formulation other than the active ingredient is expected to enhance the toxicity of the active ingredient or to cause toxicity to aquatic organisms.

10. Data are required on one freshwater aquatic invertebrate species.

11. Data are required on one estuarine/marine mollusk, one estuarine/marine invertebrate and one estuarine/marine fish species.

Case: 26-298, 08/21/2026, DktEntry: 31.2, (37 of 37)



12. Data are generally not required for outdoor residential uses, other than turf, unless data indicate that pesticide residues from the proposed use(s) can potentially enter waterways.

13. Data are required on one freshwater fish species. If the test species is different from the two species used for the freshwater fish acute toxicity tests, a 96–hour $LC_{50}$ on that species must also be provided.

14. Data are required on one estuarine/marine invertebrate species.

15. Data are required on estuarine/marine species if the product meets any of the following conditions:

i. Intended for direct application to the estuarine or marine environment.

ii. Expected to enter this environment in significant concentrations because of its expected use or mobility patterns.

iii. If the acute $LC_{50}$ or $EC_{50}$ <1 milligram/liter (mg/l).

iv. If the estimated environmental concentration (EEC) in water is ≥0.01 of the acute $EC_{50}$ or $LC_{50}$ or if any of the following conditions exist:

A. Studies of other organisms indicate the reproductive physiology of fish and/or invertebrates may be affected.

B. Physicochemical properties indicate bioaccumulation of the pesticide.

C. The pesticide is persistent in water (e.g., half-life in water >4 days).

16. Data are required on one estuarine/marine fish species.

17. Data are required on estuarine/marine species if the product is intended for direct application to the estuarine or marine environment, or the product is expected to enter this environment in significant concentrations because of its expected use or mobility patterns.

18. Data are required on freshwater species if the end-use product is intended to be applied directly to water, or is expected to be transported to water from the intended use site, and when any of the following conditions apply:

i. If the estimated environmental concentration (EEC) is ≥0.1 of the no-observed-effect level in the fish early-life stage or invertebrate life cycle test;

ii. If studies of other organisms indicate that the reproductive physiology of fish may be affected.

19. Not required when:

i. The octanol/water partition coefficients of the pesticide and its major degradates are <1,000; or

ii. There are no potential exposures to fish and other nontarget aquatic organisms; or

iii. The hydrolytic half-life is <5 days at pH 5, 7 and 9.

20. Data are required based on the results of lower tier studies such as acute and chronic aquatic organism testing, intended use pattern, and environmental fate characteristics that indicate significant potential exposure.

21. Data are required if:

i. The half-life of the pesticide in the sediment is ≤10 days in either the aerobic soil or aquatic metabolism studies and if any of the following conditions exist:

A. The soil partition coefficient (Kd) is ≥50.

B. The log Kow is ≥3.

C. The Koc ≥1,000.

ii. Registrants must consult with the Agency on appropriate test protocols prior to designing the study.

22. Data are required if:

i. The estimated environmental concentration (EEC) in sediment is >0.1 of the acute $LC_{50}/EC_{50}$ values and

ii. The half-life of the pesticide in the sediment is >10 days in either the aerobic soil or aquatic metabolism studies and if any of the following conditions exist:

A. The soil partition coefficient (Kd) is ≥50.

B. The log Kow is ≥3.

C. The Koc ≥1,000.

iii. Registrants must consult with the Agency on appropriate test protocols prior to designing the study.

23. Sediment testing with estuarine/marine test species is required if the product is intended for direct application to the estuarine or marine environment or the product is expected to enter this environment in concentrations which the Agency believes to be significant, either by runoff or erosion, because of its expected use or mobility pattern.

24. Data are required only when the formulation contains one or more active ingredients having an acute $LD_{50}$ of <11 micrograms per bee as determined in the honey bee acute contact study and the use pattern(s) indicate(s) that honey bees may be exposed to the pesticide.

25. Required if any of the following conditions are met:

i. Data from other sources (Experimental Use Permit program, university research, registrant submittals, etc.) indicate potential adverse effects on colonies, especially effects other than acute mortality (reproductive, behavioral, etc.);

ii. Data from residual toxicity studies indicate extended residual toxicity.

iii. Data derived from studies with terrestrial arthropods other than bees indicate potential chronic, reproductive or behavioral effects.

26. The freshwater fish test species for the TEP testing is the most sensitive of the species tested with the TGAI. Freshwater invertebrate and acute estuarine and marine organisms must also be tested with the EP or TEP using the same species tested with the TGAI.